STATE of Indiana, Appellant–Plaintiff,

v.

Brant MORRIS, Appellee–Defendant.

No. 50A03–0001–CR–15.

Court of Appeals of Indiana.

July 19, 2000.

Jeffrey A. Modisett, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

James E. Easterday, Easterday & Ummel, Plymouth, Indiana, Attorney for Appellee.

## OPINION

MATHIAS, Judge

The State of Indiana appeals the trial court's grant of Brant D. Morris's motion to suppress evidence. The State presents one issue for our review, which we restate as: whether the trial court properly suppressed evidence obtained during a traffic stop made to investigate a violation of the Indiana Seatbelt Enforcement Act. IND. CODE § 9–19–10–3 (1998).

We reverse.

### Facts and Procedural History

On September 6, 1998, Culver City Police Officer Steve Huskins was on patrol as part of Operation Pull Over, a state subsidized law enforcement program that puts extra officers on the road at certain times to look for traffic violations and drivers under the influence of alcohol. At approximately 1:05 a.m., Officer Huskins observed Morris driving without wearing the shoulder restraint of his seatbelt. Officer Huskins initiated a traffic stop for the purpose of issuing Morris a warning for failure to wear his seatbelt. When Officer Huskins asked Morris for his driver's license and registration, Morris stated that he did not have his driver's license with him, but provided Officer Huskins with his name and vehicle registration. Morris remained inside his vehicle while Officer Huskins ran a driver's license check through the Marshall County Sheriff's Department, which revealed that Morris's license was suspended. Officer Huskins thereupon returned to Morris's vehicle and asked him to step out of it. When Morris exited his vehicle, Officer Huskins detected the odor of alcoholic beverage on Morris's breath and asked Morris if he had been drinking. Morris responded affirmatively and agreed to take a chemical breath test, which revealed a breath alcohol content of 0.10.

Morris was charged with driving while suspended, operating a vehicle while intoxicated, and operating a vehicle with at least ten-hundredths percent of alcohol in his breath. Because Morris had a previous conviction for operating while intoxicated, the later two charges were elevated to Class D felonies.

Morris subsequently filed a motion to suppress the evidence of his license suspension and his intoxication, arguing that the evidence was obtained in violation of the Indiana Seatbelt Enforcement Act. After a hearing, the trial court granted Morris's motion to suppress. The State appeals.[1]

---

1. Morris alleges, without argument or citation, that the State's appeal from the grant of his motion to dismiss is an uncertified interlocutory appeal, and therefore, this Court lacks jurisdiction to decide it. Ind.App. Rule 4(B)(6). However, the right of the State to appeal in a criminal proceeding is statutory. IND.CODE § 35–38–4–2 (1998); *State v. Aynes,*

### Discussion and Decision

█ In reviewing a trial court's ruling on a motion to suppress, we review the record for substantial evidence of probative value to support the trial court's determination. *Willsey v. State*, 698 N.E.2d 784, 789 (Ind.1998), *reh. denied.* We do not reweigh the evidence or reassess the credibility of witnesses. We resolve conflicting evidence in favor of the trial court and consider any substantial uncontroverted evidence. *Id.* Where the issue presented on appeal is a question of law, however, we review the matter de novo. *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind.1997).

The trial court based its decision to suppress the evidence on its interpretation of the Indiana Supreme Court's recent decision in *Baldwin v. Reagan*, 715 N.E.2d 332 (Ind.1999). Specifically, the trial court interpreted our Supreme Court's discussion of the second sentence of the Seatbelt Enforcement Act in *Baldwin* to prohibit Officer Huskins's conduct subsequent to the traffic stop of Morris. In reaching this conclusion the trial court stated, "I.C. 9–19–10–3 requires that when a stop to determine a seat belt law is made, the police are strictly prohibited from determining anything else, even if another law would permit further investigation and inquiry." R. at 55. The trial court went on to conclude that "the stop by Officer Huskins is a violation of the principles as set forth in *Baldwin vs. Reagan* and the strict and narrow interpretation given of the Indiana seat belt statute by the Attorney General [in *Baldwin* ]." *Id.*

We reverse because we disagree with the trial court's interpretation of *Baldwin.* We acknowledge, however, that the trial court made its decision in this case without the benefit of *Trigg v. State*, 725 N.E.2d 446, 449 (Ind.Ct.App.2000) (discussing *Baldwin* and holding that Seatbelt Enforcement Act cannot reasonably be interpreted to prohibit a patdown search for weapons when justified under *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In *Baldwin*, our Supreme Court was called upon to determine the constitutionality of the Seatbelt Enforcement Act, which provides that: "[a] vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter."

█ *Baldwin*, 715 N.E.2d at 337; IC 9–19–10–3. The court concluded that the statute is constitutional because "there is a reasonable interpretation of the act which is constitutional." *Id.* at 339. We believe that *Baldwin* stands only for the proposition that the Seatbelt Enforcement Act is constitutional and that an Indiana law enforcement officer may not stop a motorist to enforce the seat belt law unless the officer has reasonable suspicion that the driver or passenger is not wearing a seat belt. *Id.* at 337; *see Trigg*, 725 N.E.2d at 449 (discussing the scope of *Baldwin* ). Reasonable suspicion exists where the officer observes circumstances that would cause an ordinary person to agree that the driver or passenger is not wearing a seat belt. *Baldwin*, 715 N.E.2d at 332–37.

█ Like Morris, the trial court focused on the second sentence of the Act, which provides that: "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained *solely* because of a violation of this chapter." IC 9–19–10–3 (emphasis added). When interpreting the meaning of a statute, this Court is guided by well-established rules of statutory construction. *Campbell v. State*, 714 N.E.2d 678, 681 (Ind.Ct.App.1999). A statute should be construed to ascertain and give

---

715 N.E.2d 945, 948 (Ind.Ct.App.1999). The State's appeal in this case is based on IC 35–38–4–2(5), which allows the State to appeal the trial court's suppression of evidence where the suppression effectively precludes further prosecution.

effect to the expressed intention of the General Assembly by giving the words and phrases their common and ordinary meaning. *Id.* at 682.

We think the plain language of this statute evidences the General Assembly's intent that a traffic stop based upon the failure of either the driver or passenger to wear a seatbelt, standing alone, does not provide reasonable suspicion for the police to unilaterally expand their investigation and "fish" for evidence of other possible crimes. However, when circumstances arise after the initial stop that create reasonable suspicion of other crimes, further reasonable inspection, search, or detention is no longer "solely" because of a seatbelt violation and does not contravene the plain language of the statute. The officer may only expand his or her investigation subsequent to the stop if other circumstances arise after the stop, which independently provide the officer with reasonable suspicion of other crimes. Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. *Baldwin,* 715 N.E.2d. at 337 (citing *Taylor v. State,* 639 N.E.2d 1052, 1054 (Ind.Ct.App.1994)).

Our interpretation is consistent with the rule of statutory construction that we will presume the General Assembly did not intend an unreasonable and absurd result. *State v. Langen,* 708 N.E.2d 617, 621 (Ind.Ct.App.1999). The General Assembly could not have intended the Act to preclude an officer who makes a seatbelt stop from expanding his investigation regardless of what he encounters when he approaches the vehicle. *See, e.g., Trigg,* 725 N.E.2d at 449. This point is highlighted by the facts of this case. The General Assembly is rightfully concerned and has enacted legislation to protect the public from drunk drivers. It would be unreasonable for an officer who smells alcoholic beverage on the breath of a driver of a vehicle to send that driver on his way without further inquiry, merely because the initial stop was for a seatbelt violation.

In the case at bar, Officer Huskins had reasonable suspicion that Morris was not wearing his seatbelt when he observed Morris driving without wearing the shoulder harness of his seatbelt. Consequently, Officer Huskins's traffic stop of Morris was reasonable and valid under the Seatbelt Enforcement Act. Officer Huskins was further justified in requesting Morris's license because it was reasonably necessary to issue a warning or citation for failure to wear a seatbelt.

Upon learning that Morris did not have a driver's license with him, Officer Huskins ran a license check and discovered that Morris's license was suspended. Morris's failure to produce his license was a circumstance independent of the initial seatbelt violation, which provided Officer Huskins with reasonable suspicion that Morris might not have a valid driver's license. After determining that Morris's license was suspended, Officer Huskins acted reasonably in requesting that Morris exit the vehicle, because he could not allow Morris to continue driving on a suspended license. When Morris exited the vehicle and Officer Huskins detected the odor of alcoholic beverage on Morris's breath, a second circumstance independent of the seatbelt stop arose, which led to Officer Huskins's reasonable suspicion that Morris was driving under the influence.

The trial court's interpretation of *Baldwin,* made without the benefit of this Court's later decision in *Trigg,* was too narrow. Neither the evidence regarding Morris's suspended license, nor the evidence of his intoxication were obtained as a result of detention, search, or inspection solely because Morris was not wearing his seatbelt. Rather, the evidence was obtained as a result of independent circumstances that arose after a proper initial stop – circumstances which independently justified the officer's subsequent actions.

Accordingly, we conclude that the trial court erred when it granted Morris's motion to suppress.

Reversed.

NAJAM, J., concurs.

FRIEDLANDER, J., concurs with opinion.

FRIEDLANDER, Judge, concurring with opinion

Indiana's Seatbelt Enforcement Act (the Seatbelt Law) carries with it the potential for significant incursion upon the rights against unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution and article I, section 11 of the Indiana Constitution. While concurring fully in the majority opinion, I write separately to add my voice to the chorus of those who have expressed the need for vigilance in cases involving both a traffic stop in which a violation of the Seatbelt Law is alleged, and a subsequent search of the vehicle or its occupants.

Our supreme court has recognized the potential for misuse of the Seatbelt Law as a vehicle for pretextual traffic stops. *See Baldwin v. Reagan,* 715 N.E.2d 332 (Ind. 1999). Apparently recognizing this danger as well, the Indiana General Assembly drafted a 1998 amendment to the statute to insure that such stops would not be permitted. *See id.* That amendment states:

"A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter."

Ind.Code Ann. § 9–19–10–3 (West Supp. 1999) (as amended by P.L. 116–1998, § 2). Pursuant to the 1998 amendment, after making a traffic stop to determine compliance with the Seatbelt Law, police are strictly prohibited from determining anything else, even if another law would permit it. *See Baldwin v. Reagan,* 715 N.E.2d 332.

The Indiana Attorney General expressed his agreement with the expressed concerns of both the General Assembly and our supreme court in this regard by emphasizing the point during oral argument in *Baldwin.* According to the supreme court, the Attorney General stated his opinion that the statute could be read to prohibit a police officer making a seat belt stop from even asking the driver for consent to search the vehicle or its occupants. The supreme court agreed with that interpretation and held that the Seatbelt Law, as amended, was intended to provide motorists with protection from the pretextual seat belt searches and seizures that might be authorized under *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Therefore, all three branches of government seem to be in accord that challenges to searches arising under the Seatbelt Law must be considered with this heightened risk of erosion of freedom in mind.

Turning now to the instant case, Officer Huskins stopped Morris because he observed that Morris was not wearing his seatbelt. While subsequently performing a routine check of Morris's driver's license, the officer learned that Morris's license was suspended. I agree that the routine driver's license check, along with the events that ensued after the discovery that Morris's license was suspended, were authorized under the rationale espoused in *Trigg v. State,* 725 N.E.2d 446. In my view, neither *Trigg* nor its application to the particular facts of this case represents the first step down the slippery slope that might lead to the erosion of Fourth Amendment and article 1, § 11 liberties.