**Gary W. PEARSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 87A04–0702–CR–93.

Court of Appeals of Indiana.

July 31, 2007.

Brett M. Roy, Roy Law Office, Boonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a bench trial, Appellant, Gary W. Pearson, was convicted of Possession of Methamphetamine as a Class A misdemeanor,[1] Possession of Marijuana as a Class A misdemeanor,[2] and Failure to Use Front Seat Belt, a Class D infraction.[3]

---

1. Ind.Code § 35–48–4–6 (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–48–4–11 (Burns Code Ed. Repl.2004).

3. Ind.Code § 9–19–10–2 (Burns Code Ed.

Upon appeal, Pearson presents two issues for our review, which we consolidate and restate as whether the trial court abused its discretion in admitting evidence seized from his person during a traffic stop for his failure to wear a seatbelt.

We reverse and remand.

The facts most favorable to the convictions reveal that on September 9, 2004, Officer Matt Hastings of the Chandler Police Department observed Pearson[4] driving a vehicle without a seatbelt, thus prompting him to initiate a traffic stop. Upon approaching the vehicle, Officer Hastings observed that Pearson was now wearing his seatbelt. Officer Hastings ordered Pearson out of the car so he could conduct a pat-down search for weapons, believing such was necessary out of concern for his own safety given his knowledge of prior incidents during which Pearson had been violent.[5] While performing the pat-down search of Pearson, Officer Hastings asked Pearson if he had anything on his person of which he should be aware, and Pearson responded that he had marijuana in a pants pocket. Officer Hastings then retrieved the marijuana[6] from Pearson and placed him in custody. Officer

Hastings then finished the search of Pearson's person and also conducted a search of Pearson's car. Officer Hastings found in a different pants pocket a white paper sleeve and foil containing a white powder residue, which was later determined to contain methamphetamine.[7] At some point during the traffic stop, Officer Hastings obtained Pearson's driver's license in order to check its status.[8] The record search revealed that Pearson's license had been suspended.

On September 27, 2004, the State charged Pearson with possession of methamphetamine as a Class D felony, possession of marijuana as a Class A misdemeanor, possession of paraphernalia as a Class A misdemeanor, driving while suspended as a Class A infraction, failure to use a seat belt as a Class D infraction, and possession of paraphernalia with a prior conviction as a Class D felony. On February 14, 2005, Pearson moved to suppress the evidence obtained during the pat-down search, claiming the search was illegal because Officer Hastings had no reasonable suspicion that he was armed and dangerous. The trial court held a hearing on Pearson's motion to suppress on April 18,

---

Repl.2004).

4. From the record, it appears that Officer Hastings recognized Pearson.

5. On cross-examination, Officer Hastings explained that during an incident in July 2004, Pearson was involved in an altercation with another individual who ended up going to the hospital. Pearson was apparently charged with misdemeanor battery arising out of this incident, but, unbeknown to Officer Hastings at the time of the instant traffic stop, Pearson was subsequently found not guilty.

Officer Hastings also generally described a second incident where he had been informed while on duty that Pearson was involved in an incident and that Pearson "was possibly armed." Transcript at 15. Pearson was never located at the time of this alleged incident, however.

6. Testing by the Indiana State Police Laboratory confirmed that Pearson was in possession of 0.99 gram of marijuana. State's Exhibit 4.

7. Testing by the Indiana State Police Laboratory determined that the white powder residue contained methamphetamine, a controlled substance, and Nicotinamide, which is not a controlled substance. State's Exhibit 4.

8. In his brief, Pearson maintains that Officer Hastings did not ask for his license and run a license check until after the pat-down search and discovery of marijuana and white powder residue. From our reading of Officer Hastings's testimony, we agree with Pearson and further note that the State does not challenge this timing of events.

2005.[9] On May 2, 2005, the trial court denied Pearson's motion. Pearson filed a petition requesting that the matter be certified for interlocutory appeal, which petition the trial court granted. On August 26, 2005, this court denied Pearson's request that we accept jurisdiction over his interlocutory appeal.

Proceedings in the trial court resumed, and the matter proceeded to a bench trial on November 21, 2005. At the conclusion of the evidence, the trial court found Pearson guilty of possession of methamphetamine, possession of marijuana, and failure to use a seatbelt.[10] On November 6, 2006, the trial court entered convictions for possession of methamphetamine as a Class A misdemeanor,[11] possession of marijuana as a Class A misdemeanor, and failure to use a seatbelt as a Class D infraction. The trial court then sentenced Pearson to one year on both possession offenses, with six months suspended and six months to be served in a work-release program.[12] Pearson filed his notice of appeal on November 17, 2006.

Upon appeal, Pearson argues both that the trial court abused its discretion in denying his motion to suppress and in overruling his objections to the admission of evidence during the bench trial. Because Pearson appeals following a bench trial, our review upon appeal is with regard to the admission of evidence. *See Washington v. State*, 784 N.E.2d 584, 586 (Ind.Ct. App.2003). The admission of evidence is within the broad discretion of the trial court. *Id.* at 587. Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only if the trial court abused its discretion. *Id.* An abuse of discretion will be found if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Here, Pearson does not challenge the propriety of the initial traffic stop. Rather, Pearson argues that Officer Hastings' pat-down search for weapons during a traffic stop based solely upon a seatbelt violation was in violation of Indiana Code § 9–19–10–3 (Burns Code Ed. Repl.2004). The State responds, arguing that the limited pat-down search for weapons was proper because Officer Hastings, based upon his knowledge of prior incidents involving Pearson, had a reasonable belief that Pearson may be armed and dangerous. The State further argues that the contraband was not found as a result of the pat-down search, but rather, when Pearson admitted to his possession of marijuana when asked by Officer Hastings if he had anything on his person of which Officer Hastings should be made aware.

Indiana Code § 9–19–10–3, also known as the Seatbelt Enforcement Act, provides that "[a] vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter." In *Baldwin v. Reagan*, 715

---

**9.** A transcript of this hearing is not included in the record before us.

**10.** The trial court found Pearson not guilty of driving while suspended, and the State was permitted to dismiss the two counts relating to possession of paraphernalia.

**11.** In entering a conviction as a Class A misdemeanor, we presume the trial court was acting pursuant to Indiana Code § 35–50–2–7 (Burns Code Ed. Supp.2006), which permits a

trial court to enter a judgment of conviction of a Class A misdemeanor, if a person has committed a Class D felony, so long as certain conditions are not found by the trial court.

**12.** The near year delay in sentencing was occasioned by agreements of the parties to continue the sentencing hearing and Pearson's request to pursue placement in a program through drug court, for which he was eventually determined to be ineligible.

N.E.2d 332, 337 (Ind.1999), our Supreme Court addressed the constitutionality of I.C. § 9–19–10–3 and concluded that the statute could be constitutionally applied because under Article 1, Section 11 of the Indiana Constitution law enforcement officers may stop motorists only where they have reasonable suspicion that a seatbelt violation has occurred. In other words, the Court held that police may initiate a traffic stop based upon reasonable suspicion that the occupants in the front seat of a vehicle are not wearing seatbelts. *Id.*

■ In *Trigg v. State,* 725 N.E.2d 446, 448 (Ind.Ct.App.2000), this court clarified that I.C. § 9–19–10–3 should not be read to prohibit police from performing a limited search for weapons for officer safety. The court noted that a limited search for weapons would be "the result of actions or behavior on the part of the defendant *after* the initial stop that lead a police officer to fear for his safety." *Id.* at 448 (emphasis supplied). *See also State v. Morris,* 732 N.E.2d 224 (Ind.Ct.App.2000). The court reasoned that under such circumstances, a limited search for weapons after a stop under the Seatbelt Enforcement Act is not a search "solely because of a violation" of the seatbelt law. *Trigg,* 725 N.E.2d at 448. The search is not to discover evidence of a crime, but to permit the officer to pursue the investigation without fear for his safety and that of others. *Id.* at 449. So long as circumstances exist over and above the seatbelt violation itself, a limited search for weapons is not prohibited by I.C. § 9–19–10–3. *Id.*

■ In such cases, the issue becomes whether a limited weapons search was proper. We begin by noting that the Fourth Amendment guarantees people the right to be free from unreasonable searches and seizures. Article 1, Section 11 of the Indiana Constitution also serves the purpose of protecting citizens of this State from unreasonable police activity in those areas of life which Hoosiers regard as private. *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995). Our Supreme Court has acknowledged that "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Id.* at 80.

■ In deciding whether a pat-down search for weapons was proper, we consider whether the facts available to the officer at the moment of the search would warrant a person of reasonable caution in believing the action taken was appropriate. *Trigg,* 725 N.E.2d at 449. An officer may conduct a limited search for weapons only when he has a reasonable belief that the suspect is armed and dangerous. *Id.* In other words, an officer may conduct a search for weapons without obtaining a search warrant if the officer reasonably believes that he or others may be in danger. *Id.* An officer need not be absolutely certain that an individual is armed. *Id.* In determining the reasonableness of the officer's actions, due weight must be given, not to an officer's inchoate and unparticularized suspicions, but to the specific reasonable inferences that the officer is entitled to draw from the facts in light of his experience. *Id.*

Here, Officer Hastings initiated a traffic stop solely under I.C. § 9–19–10–3 after he observed Pearson driving a car without wearing a seatbelt. Upon approaching Pearson's car, Officer Hastings immediately ordered Pearson out of his car so that he could conduct a limited search for weapons. Officer Hastings explained that he believed the pat-down for weapons was necessary because of his knowledge of two prior incidents where it had been reported that Pearson had been violent or "was possibly armed." Given Officer Hastings testimony that Pearson cooperated during the traffic stop, Officer Hastings' sole basis for the pat-down search was his prior knowledge of Pearson's conduct on the two previous occasions.

Although there were no circumstances arising after the initial stop which lead to Officer Hastings' decision to conduct a limited pat-down search for weapons, we conclude that his knowledge of Pearson's conduct on two prior occasions was sufficient to warrant a person of reasonable caution in believing that Pearson may have been armed and that Officer Hastings' actions at the time of the instant traffic stop were reasonable. Indeed, Officer Hastings knew that Pearson had been involved in an altercation and that as a result, another individual was taken to the hospital. Officer Hastings also knew that Pearson had been reported to have been in possession of a weapon on another occasion. This information justified the minimal intrusion imposed by a limited pat-down search for weapons. *See United States v. Menard,* 898 F.Supp. 1317, 1322–23 (N.D.Iowa 1995).

■ Notwithstanding the fact that Officer Hastings may have had reasonable suspicion to justify the pat-down search for weapons, as pointed out by the State, the marijuana was not discovered as a result of the pat-down search, but rather upon Pearson's response to Officer Hastings' question during the pat-down search.[13] Under the Fourth Amendment, it is reasonable for an officer to ask questions of a motorist, so long as the officer's questioning does not extend the length of the detention beyond the purpose of the stop. *Muehler v. Mena,* 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *United States v. Alcaraz–Arellano,* 441 F.3d 1252, 1258 (10th Cir.2006). Following Fourth Amendment jurisprudence, our Supreme Court has held that under the Indiana Constitution it is reasonable for an officer,

with respect to a driver of a vehicle lawfully stopped for a traffic violation, to request the driver's license and registration, to request to search the driver's vehicle, or to inquire whether the defendant has a weapon in the vehicle. *State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006).

We recognize the above authority, but conclude that it is inapplicable to the case before us given the language of I.C. § 9–19–10–3, which governs the situation presented, i.e. a traffic stop based solely upon a seatbelt violation. In *Baldwin, supra,* our Supreme Court responded to the plaintiff's argument that the Seatbelt Enforcement Act provided unrestrained discretion for law enforcement officers to stop motorists to determine whether they were wearing their seatbelts by acknowledging the Attorney General's assertion that the General Assembly intended to limit, rather than expand, police authority when it passed the seatbelt law. 715 N.E.2d. at 338. The Court then noted that the first line of the Act is "no more than an introduction," while the second sentence of the Act is of "prime importance." *Id.* at 339. The Court continued:

"Read this way, the statute requires that when a stop to determine seat belt law compliance is made, *the police are strictly prohibited from determining anything else, even if other law would permit.* The Attorney General emphasized this point at oral argument by saying that he thought the statute could be read to prohibit a police officer making a seat belt stop from even asking the driver for consent to search the vehicle or its occupants." *Id.* (emphasis supplied).

In a footnote, the Court stated, "Although the consent issue is not before us today, we are inclined to think that this view is

---

**13.** The State argues that the evidence of the contraband was admissible because Pearson admitted to his possession of marijuana. The methamphetamine was discovered during an

extended search of Pearson's person after Pearson was placed in custody for his possession of marijuana.

consistent with the statute's language that 'a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of' a seat belt stop." *Id.* at n. 8.

Applying this interpretation, this court, in *State v. Morris*, 732 N.E.2d 224, 228 (Ind.Ct.App.2000), held that under I.C. § 9–19–10–3, a traffic stop based solely upon the failure of the driver or the passenger to wear a seatbelt does not provide reasonable suspicion for the officer to "unilaterally expand [an] investigation and 'fish' for evidence of other possible crimes." The court noted, however, that an officer may expand his or her investigation subsequent to the traffic stop for a seatbelt violation if other circumstances arise after the stop which independently provide the officer with reasonable suspicion of other crimes. *Id.*

The circumstances reviewed by the court in *Morris* were that an officer had observed Morris driving without wearing the shoulder restraint of his seatbelt, thereby prompting the officer to initiate a traffic stop for seatbelt enforcement. Although Morris did not have his driver's license, he provided the officer with his name and vehicle registration. A license check revealed that Morris's license was suspended. Upon returning to Morris's vehicle, the officer asked him to step out, and when Morris did so, the officer detected an odor of alcoholic beverages on Morris's breath. Morris admitted to the officer that he had been drinking and agreed to submit to a chemical breath test.

Given these facts, the court concluded that Morris's failure to produce his license was a circumstance independent of the initial seatbelt violation which provided the officer with reasonable suspicion that Morris may not have a valid driver's license. *Id.* After discovering that Morris's license was suspended, the court found that the officer acted reasonably in requesting that Morris exit the vehicle. *Id.* It was at this point that the officer detected an odor of alcoholic beverage coming from Morris's breath, thereby providing the officer with a second circumstance independent of the seatbelt stop giving rise to reasonable suspicion that Morris was driving under the influence and justifying further investigation. *Id.*

In another case under I.C. § 9–19–10–3, *Clark v. State*, 804 N.E.2d 196 (Ind.Ct. App.2004), an officer initiated a traffic stop after observing Clark driving without wearing his seatbelt. The officer approached Clark's vehicle and requested his driver's license and registration, but Clark produced only a driver's license. Additionally, the officer observed that Clark appeared to be unusually nervous. After confirming that the vehicle was registered, the officer returned Clark's license and gave him a warning ticket. The officer then asked Clark if he had anything illegal in his vehicle, to which Clark responded that he did not. The officer then asked if he could look in the car and Clark agreed, but informed the officer that he was running low on gas. The officer then followed Clark to a gas station. When Clark exited his car at the gas station he told the officer to "go ahead and look." Upon searching the car, the officer found a plastic bag containing marijuana.

Upon appeal, this court held that the trial court abused its discretion in denying Clark's motion to suppress the marijuana. The court noted that aside from the seatbelt violation, there were no facts known to the officer which would have reasonably led him to believe that criminal activity had occurred or was about to occur when he asked for consent to search Clark's vehicle. *Id.* at 201. Without an independent reasonable suspicion of another crime arising out of circumstances after the traffic stop was initiated, the court held that

the officer was prohibited from seeking consent to search Clark's vehicle.[14] *Id.* (citing *Baldwin*, 715 N.E.2d at 337–39).

Keeping in mind the Attorney General's position that with I.C. § 9–19–10–3 the legislature intended to limit, rather than expand, police authority with respect to seat belt enforcement stops and his position that the Seatbelt Enforcement Act could be read to prohibit a police officer from even asking for consent to search, we conclude that Officer Hastings was not justified in asking Pearson if he had anything on his person. Our conclusion is supported by the case law applying I.C. § 9–19–10–3. Officer Hastings' question went beyond the discretion afforded officers during traffic stops initiated under I.C. § 9–19–10–3 solely for purposes of seatbelt enforcement. Under the circumstances presented in this case, we conclude that the question posed to Pearson by Officer Hastings, during a pat-down search for weapons to which Pearson was cooperating, was an attempt by Officer Hastings to "fish" for evidence of other crimes. Indeed, the question was potentially incriminating, going beyond an inquiry for officer safety purposes, and was posed under very intimidating circumstances. Given the language of I.C. § 9–19–10–3, the Attorney General's own position with respect to the interpretation of such language, and the case law interpreting it, without circumstances arising after the stop which independently provide the officer with reasonable suspicion of other crimes, such conduct on behalf of police officers is not permitted. Therefore, the marijuana discovered on Pearson's person was inadmissible. Because the discovery of the marijuana was made through improper means and because such precipitated the subsequent search of Pearson's person which further revealed the white powder residue containing methamphetamine, the evidence of Pearson's possession of methamphetamine was likewise inadmissible.

Where evidentiary error has occurred, reversal is required only if it is apparent that the fact finder relied upon the improper evidence in reaching its determination. *See Hannoy v. State*, 789 N.E.2d 977, 989 (Ind.Ct.App.2003), *trans. denied.* Here, it is clear that the improperly admitted evidence was relied upon in finding Pearson guilty of possession of marijuana and possession of methamphetamine.

Because of the improperly admitted evidence, Pearson requests that we vacate his convictions or, in the alternative, remand with instructions for the trial court to sustain his objection to the admission of any and all evidence relating to the illegal search. Because there was sufficient evidence to sustain Pearson's convictions, including the improperly admitted evidence, he may be retried on remand. *Id.* at 990 (citing *Stahl v. State*, 686 N.E.2d 89, 94 (Ind.1997)).[15]

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

ROBB, J., and VAIDIK, J., concur.

---

14. In a footnote, the court responded to the State's argument that the search of Clark's car was valid as it was conducted pursuant to Clark's valid consent. The court rejected the State's argument, noting that the officers opportunity to request the consent to search "arose solely by virtue of the fact that Clark had been stopped for a seatbelt violation." *Id.* at n. 6.

15. But, because the only evidence supporting his convictions would seem to be inadmissible, we must surmise that the State could not *successfully* retry him.