**In re ADOPTION OF L.D.**

**A.B. and N.E., Appellants,**

v.

**Jo.D. and Ja.D., Appellees.**

No. 49A02–0907–CV–671.

Court of Appeals of Indiana.

Feb. 25, 2010.

Kelly R. Eskew, Cantrell Strenski & Mehringer LLP, Susan Boatright, Indianapolis, IN, Attorneys for Appellants.

Mary Jane Norman, Margaret Lois Jansen, Indianapolis, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

A.B. ("Mother")[1] and N.E.[2] separately appeal from the trial court's order denying their joint motion to set aside the court's decree granting a petition filed by Jo.D. and Ja.D. ("Paternal Grandparents") to

1. The briefs and record on appeal occasionally refer to Mother as having a hyphenated last name, which would make her initials A.H.-B. The parties and the court more often refer to Mother as having only a single last name, with the initials A.B., and we will do the same.

2. As discussed briefly below, N.E. became L.D.'s adoptive maternal grandmother when she adopted Mother as an adult in 2005.

adopt L.D. ("the Child"). We address the following restated issues:[3]

1. Whether Indiana Code Section 31–19–9–1 requires Mother's consent to the adoption of L.D. by the Paternal Grandparents.
2. Whether the adoption decree ("Decree" or "Adoption Decree") is void due to lack of service of process on Mother.
3. Whether the notice provisions in the adoption statute violate Due Process and Equal Protection rights provided in the United States Constitution.
4. Whether the trial court correctly construed Indiana Code Section 31–17–5–9 of the Grandparent Visitation Act ("the Act") regarding N.E.'s request for visitation with L.D. following the entry of the Decree.

We affirm in part and dismiss in part.

## FACTS AND PROCEDURAL HISTORY

On March 1, 2003, while incarcerated, Mother gave birth to L.D. Mother was not married at the time. Sometime shortly after the birth, N.E., a co-worker of Mother, obtained guardianship of the Child.[4]

At some point, paternity of the Child was established in the son of the Paternal Grandparents ("Father"), whom the Paternal Grandparents had adopted as an infant.[5]

On August 9, 2003, the Paternal Grandparents filed a petition to adopt the Child. In December 2004, the court issued an Agreed Entry ("2004 Agreed Entry") under the paternity and guardianship cause numbers.[6] The 2004 Agreed Entry dissolved N.E.'s guardianship of the Child. The order also awarded joint legal custody of the Child to the Paternal Grandparents and Mother; physical custody of the Child to the Paternal Grandparents; non-custodial parenting time to Mother, to be supervised by N.E.; and non-custodial parenting time to N.E. individually. On April 15, 2005, N.E. adopted Mother.[7]

In June 2006, the trial court entered another Agreed Entry ("2006 Agreed Entry") under the paternity cause number. The 2006 Agreed Entry modified the 2004 Agreed Entry as follows:

2. Mother's visitation with [the Child] is terminated, effective immediately, pending her appearance before the Court and having a hearing to determine

---

**3.** N.E. also purports to challenge the constitutionality of the Grandparent Visitation Act, specifically, that the act contains an "illogical exclusion for adoptive grandparents to visit their grandchildren," which, in turn, violates equal protection and due process rights. N.E.'s Brief at 21. But aside from a few mere assertions, N.E. in no way develops that argument. As such, N.E. has not supported her argument regarding the constitutionality of the act with cogent reasoning or citation to supporting legal authority, and it is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

**4.** Paternal Grandparents assert that N.E. had guardianship for "seventeen months," Appellees' Brief at 5, and N.E. asserts that she had guardianship for "approximately 22 months," N.E.'s App. at 57. The parties do not include

any documentation to show the exact length of the guardianship period, but the exact period of N.E.'s guardianship is not material to the resolution of the issues on appeal.

**5.** Father did not file an appearance on brief on appeal.

**6.** Father, Mother, the Paternal Grandparents, and N.E. were parties to the paternity action. Those same parties and Debra Marshall (not otherwise identified) signed the 2004 Agreed Entry. As discussed later, Father, the Paternal Grandparents, and N.E. signed a subsequent agreed entry in 2006.

**7.** The parties have not included documentation in the record on appeal regarding N.E.'s adoption of Mother.

Mother's fitness to have contact with [the Child].

3. Visitation between [the Child] and [N.E.] shall be in the nature of non-custodial parenting time, pursuant to the Indiana Supreme Court Parenting Time Guidelines, and include the holiday parenting time schedule, with [certain exceptions listed.]

Mother's App. at 21–22. Mother was incarcerated at the Rockville Correctional Facility from September 2006 through July 2007.

On August 23, 2007, the Paternal Grandparents again filed a Petition for Adoption ("the Petition"). In the Petition, they alleged that Mother's consent was not required for the adoption because "she has knowingly and without justifiable cause failed to communicate significantly with, care for, or support the children [sic] for over one year when she was able to do so. Her whereabouts are unknown." *Id.* at 26. The Paternal Grandparents also filed an affidavit alleging that they did not have Mother's address or telephone number; that they had inquired with the Indiana Department of Correction and the Marion County Jail and learned that Mother was not at that time incarcerated; and that Mother had not contacted the Child since August 2005. On October 9, 2007, the Paternal Grandparents filed proof of service of the Petition on Mother by publication in the Indianapolis Recorder. Father filed his consent to the adoption in November 2007. No notice of the Petition was given to N.E.

On January 31, 2008, the Paternal Grandparents dropped L.D. off with N.E. for visitation. During N.E.'s visitation, the Paternal Grandparents attended a hearing on the Petition, and the trial court issued the Decree granting the Petition. When the Paternal Grandparents picked up L.D., they informed N.E. that they had adopted the Child and that her visitation with him would be phased out.

On February 13, 2008, Mother and N.E. filed a joint motion for rule to show cause, to intervene in the adoption, and for relief from judgment ("the Motion"). The Paternal Grandparents filed a motion to dismiss the Motion. N.E. subsequently filed a petition for parenting time pending a hearing on the Motion, and, following a hearing on the visitation request, the trial court granted N.E. one day of visitation per month in April and May 2008. The cause was then transferred to Marion Superior Court 4, which had presided over the paternity case.

On August 26, the court held a hearing and heard evidence solely on the issue of whether the Adoption Decree should be set aside. Following the hearing, the court took the matter under advisement. The trial court later ordered the parties to mediate, but mediation was unsuccessful. On March 31, 2009, the court issued its Findings of Fact, Conclusions of Law, and Judgment ("Judgment"), denying the motion to set aside the Decree. The court found in relevant part:

3. In August 2005, the [Paternal Grandparents] again [sic] petitioned for adoption of [the Child]. In 2007, without notice to [N.E.], publication notice was provided to [Mother]. In support of the publication notice, the [Paternal Grandparents] submitted a sworn affidavit to the adoption court detailing their efforts to locate [Mother] by contacting both the Indiana Department of Correction and the Marion County Jail on August 20, 2007. On August 21, 2007, they inquired of [N.E.] about the whereabouts of [Mother]. Their petition alleged that [Mother] was unfit and that she had not communicated significantly or supported the child for over one year. The [Paternal Grandparents] inquired at

[Mother's] last known address, that of her adoptive mother, [N.E.], whether [Mother] was residing there and if [N.E.] knew where she was living. They were given a negative reply to both queries; they subsequently filed notice of the adoption proceeding by publication.

4. The adoption was finalized in Marion Superior Court 8 on January 31, 2008, under cause number 49D08–0708–AD–035277.

5. On or about February 13, 2008, [N.E. and Mother] jointly filed a combined Motion for Rule to Show Cause, To Intervene in Adoption Cause of Action, and For Relief from Judgment or Order So As To Set Aside Adoption Decree. The Motion for Relief from Judgment included Indiana Trial Rules 60(B)(1), (3), (4) and (7).

6. Evidence was taken on [N.E. and Mother's] Motion to Set Aside on August 26, 2008 and November 12, 2008.[8]

7. The parties, by agreement, were ordered to mediation in the interim; mediation was held on March 10, 2009. Mediation was not successful.

8. At the hearing on August 26, 2008, no evidence was presented by [Mother] under Trial Rule 60(B)(1) regarding mistake, surprise, or excusable neglect. No evidence was presented under Trial Rule 60(B)(3) regarding fraud. Although [Mother] presented evidence that she did not have actual notice of the adoption proceeding she did not allege in her Motions, or present evidence of, a meritorious defense as to the allegation of unfitness. She did present evidence that she believed the court order preventing her from having contact with the child pending further order also meant

that she could not contact the [Paternal Grandparents]. She also presented evidence that she had been in and out of jail from September 21, 2006[,] through December 20, 2007[,] as an explanation as to why she was not able to pay child support. Further, she submitted drug screen results, all of which were negative for drug abuse. [Mother] did not present evidence that would show that a different result would have been reached had there been a trial on the merits, particularly if she had been allowed to participate in the hearing with respect to the allegation that she was unfit.

Mother's App. at 25–26. The court then concluded, in relevant part:

2. The judgment in the adoption case is not void. The [Paternal Grandparents] served notice to [Mother] under the Indiana Rules of Trial Procedure. Since they did not know where [Mother] was living or working, could not locate her personally, and had received no inquiries from [Mother] regarding the child, they were unable to serve notice to her pursuant to TR 4.1. The case of *In re D.C.*, 887 N.E.2d 950 (Ind.Ct.App.2008)[,] can be distinguished from this situation because the [Paternal Grandparents] had not been receiving child support payments from [Mother]. The [Paternal Grandparents] were not required to continue to try to locate [Mother] after having made a diligent search. Therefore, service by publication notice pursuant to TR 4.13 was the only remaining option.

3. Since the judgment is not void, [Mother] was required to allege and prove a meritorious defense. *Moore v. Terre Haute First Nat['l] Bank*, 582

---

8. A Minute Entry shows that the court held a conference with attorneys and parties on November 12, but the Minute Entry does not indicate whether evidence was taken. Mother's App. at 89.

N.E.2d 474, 477 (Ind.Ct.App.1991).... [Mother] admitted that she had not paid child support. She had also failed to show compliance with the conditions [ ] precedent to [the] Court's consideration of a new Petition to Modify Custody, which were set out in the December 2004 Agreed Entry. She was, however, able to demonstrate that she had been drug-free for several months prior to the hearing.

4. Further, [Mother] has been on notice at least since 2004 that the [Paternal Grandparents] desired to adopt the child when the [Paternal Grandparents] filed their first adoption petition. She was aware that her continued non-compliance with Court orders could result in a renewed petition for adoption by the [Paternal Grandparents].

5. Notice to [N.E.], or to her attorney of record, in the custody matter, when the adoption petition was filed was not required under Indiana Code 31–19 et. seq. since [N.E.] was neither a parent nor a guardian at the time even though she has since adopted [Mother] as an adult. [N.E.] is now a legal grandparent. At the time of the Petition, [N.E.] had not yet secured visitation rights under Indiana Code [Section] 31–17–5–9. Even if [N.E.] were considered to be a grandparent who had secured visitation rights pursuant to Indiana Code 31–17, such visitation rights do not give rise to the right to notice for a pending adoption.

6. Therefore, since the Order of Adoption entered under Cause Number 49D08–0708–AD [-] 035277 is not void, it is hereby affirmed. Since the adoptive parents are entitled to the same rights and privileges as a natural parent [sic], it follows that the rights and obligations of the natural mother, [Mother,] and the natural father, [Father,] are terminated as it relates to [the Child].

*Id.* at 26–28. Thus, the trial court denied the motion to set aside the Decree. Mother and N.E. now appeal.

## DISCUSSION AND DECISION

### Standard of Review

■■■ Mother and N.E. appeal from the denial of their motion to set aside the Decree under Trial Rule 60(B). We review the grant or denial of a Trial Rule 60(B) motion for relief from judgment under an abuse of discretion standard. *Munster Cmty. Hosp. v. Bernacke,* 874 N.E.2d 611, 613 (Ind.Ct.App.2007). The trial court must balance the need for an efficient judicial system with the judicial preference for deciding disputes on the merits. *Id.* On appeal, we will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or is contrary to law. *Id.*

■■■ Where, as here, the trial court has entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52, we apply the following two-tiered standard of review: whether the evidence supports the findings and whether the findings support the judgment. *Bowyer v. Ind. Dep't of Natural Res.,* 882 N.E.2d 754, 761 (Ind.Ct.App.2008). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses but consider only the evidence most favorable to the judgment. *Id.* We review conclusions of law de novo. *Id.*

### Issue One: Mother's Consent

■ Mother contends that the Adoption Decree is void because Indiana Code Section 31–19–9–1 required her consent to the adoption, and the Paternal Grandparents did not request or obtain her consent. Specifically, Mother argued to the trial court that the Decree should be set aside due to "the failure to properly obtain her consent or show that [the] same was not required[.]" Mother's App. at 40. On appeal, Mother reiterates that argument. But that issue amounts to a request that we review the Decree itself, not the Judgment denying the motion to set aside.

In the case summary filed with the Clerk of the Supreme Court, Mother states that she is appealing from the entry of the order denying her motion to set aside the Decree. And in her appellate brief Mother requests relief only under Trial Rule 60(B)(4),[9] which pertains to default judgments and, therefore, to the Judgment, which denied her motion to set aside the Decree. The issue of Mother's consent requires us to review the propriety of the Decree, a question that is not properly before us. Thus, we dismiss Mother's appeal as to the issue of consent.

### Issue Two: Service of Process

■ Mother next contends that the trial court abused its discretion when it issued its Judgment denying her motion to set aside the Decree. Specifically, Mother argues that notice by publication of the adoption proceeding was inadequate. Thus, she continues, the Judgment is erroneous because the Decree is void and the trial court did not have personal jurisdiction over her due to lack of service of process. We cannot agree.

In the Judgment, the trial court determined that Mother's consent to the adoption was not required. Indiana Code Section 31–19–4.5–2 provides the method for giving notice of an adoption to a party whose consent to the adoption is not required. That statute provides, in relevant part:[10]

[I]f a petition for adoption alleges that consent to adoption is not required under IC 31–19–9–8, notice of the adoption must be given to the person from whom consent is allegedly not required under IC 31–19–9–8. Notice shall be given:

(1) in the same manner as a summons and complaint are served under Rule 4.1 of the Indiana Rules of Trial Procedure if the person's name and address are known; or

(2) in the same manner as a summons is served by publication under Rule 4.13 of the Indiana Rules of Trial Procedure if the name or address of the person is not known;

to a petitioner for adoption.[11]

9. Mother and N.E. asked the trial court to set aside the Decree under Trial Rule 60(B)(1), (3), (4), and (7). On appeal Mother requests review only under Trial Rule 60(B)(4). N.E.'s brief does not mention Trial Rule 60(B), but the issue she raises regarding the request to set aside the Decree relates to notice, and we will consider it under Rule 60(B)(4).

10. Indiana Code Section 31–19–4.5–2 also refers to Indiana Code Section 31–19–2.5–4, which lists the situations in which notice of an adoption proceeding is not required. The facts in this case do not fall under any of those statutory exceptions to the notice requirements.

11. In 2007, the legislature amended the statute in relevant part by adding the last five words. But those last five words require the party who filed the petition for adoption to give notice to himself (the petitioner). The parties do not raise this issue but view the statute according to its perceived intent: to prescribe the method for providing notice of the adoption proceedings to a person whose consent to the adoption is not required. We do likewise and, for the purposes of this ap-

Ind.Code § 31–19–4.5–2. The issue before us is not whether Mother was entitled to notice. Instead, we must determine what type of notice to Mother the statute required and whether the notice provided by the Paternal Grandparents was adequate.

Mother maintains that she was entitled to notice under Trial Rule 4.1 because her "name and mailing address were known to the [Paternal Grandparents.]" Mother's Brief at 14. She points out that Paternal Grandparents had previously used N.E.'s mailing address to send correspondence to Mother. On the issue of service of process, the trial court found in relevant part as follows:

> The [Paternal Grandparents] served notice to [Mother] under the Indiana Trial Rules of Procedure. Since they did not know where [Mother] was living or working, could not locate her personally, and had received no inquiries from [Mother] regarding the child, they were unable to serve notice to her pursuant to [Trial Rule] 4.1.... Therefore, service by publication notice pursuant to [Trial Rule] 4.13 was the only remaining option.

Mother's App. at 12–13. At the hearing on the motion to set aside the Decree, Ja.D. testified that she had asked N.E. whether she knew "how to contact" Mother and that N.E. had replied "no, not really." August 26, 2008 Transcript at 68. Mother points to testimony from N.E. that contradicts Ja.D.'s testimony on this point. But to the extent Mother asks that we reweigh the evidence, we cannot do so. *Bowyer*, 882 N.E.2d at 761. Ja.D.'s testimony supports the trial court's finding that the Paternal Grandparents did not know Mother's address when they filed the petition for adoption.

■ Mother also argues that the Paternal Grandparents should have served her with notice under Trial Rule 4.1 when they learned, after filing the petition for adoption but before the hearing, that she was incarcerated. But Mother points to no law in support of her contention that the Paternal Grandparents were required to attempt service a second time. As such, the argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

Mother further contends that service by publication under Trial Rule 4.13 was improper because the Paternal Grandparents had not performed a diligent search to determine her whereabouts. Under Indiana Trial Rule 4.13, service may be made by publication if the person seeking service submits an affidavit that diligent search has been made and the person sought cannot be found. Here, in the affidavit in support of notice by publication, the Paternal Grandparents averred that Mother had not contacted them or the Child since 2005. And, again, at the hearing on the motion to set aside the Decree, Ja.D. testified that she had asked N.E. how to contact Mother[12] and had searched the Marion County Jail and Indiana Department of Correction databases but was unsuccessful in locating Mother through those avenues. Again, Mother's argument amounts to a request that we reweigh the evidence, which we cannot do. *Bowyer*,

peal, construe the statute in the same manner in order to avoid the absurd result noted above. *See State v. Morris*, 732 N.E.2d 224, 228 (Ind.Ct.App.2000).

12. In her appellate brief Mother asserts, without citation to any legal authority, that Ja.D.'s testimony regarding her conversation with N.E. is hearsay. But Mother did not raise this issue in the motion to set aside the Decree, nor has she shown by citation to the record on appeal that the hearsay issue was litigated at the hearing on that motion. As such, the issue is waived. *See Hlinko v. Marlow*, 864 N.E.2d 351, 355 (Ind.Ct.App.2007), *trans. denied.*

882 N.E.2d at 761. The evidence supports the trial court's finding in this regard.

■ Finally, Mother makes the following argument: "while technically compliant with Rule 4.13, publication in the *Indianapolis Recorder*, a newspaper serving the African–American population of Indianapolis, certainly did not comport with good faith and due process where every person involved in this matter is white." Mother's Brief at 17. Mother also argues that service by publication in the *Indianapolis Recorder* was not "reasonably calculated to inform" her of the adoption proceeding and, therefore, service by publication in this case is not saved by Trial Rule 4.15(F) regarding defects in summonses.

Mother's argument hinges on her assertion that service by publication was "made in a publication that no reasonable person could conclude would be read by [Mother.]" Mother's Brief at 18. But Trial Rule 4.13 requires service by publication to be made "in a newspaper authorized by law to publish notices[.]" Mother does not argue that the *Indianapolis Recorder* is not authorized by law to publish notices, only that the Paternal Grandparents should have known that she was unlikely to read that newspaper. Such is not the standard. Thus, the evidence supports the trial court's finding, and Mother's argument must fail.[13]

**Issue Three: Adoption Notice to N.E.**

■ N.E. contends that "[b]ecause Indiana Code Title 31, specifically Article 17, fails to provide notice to parties with a vested interest in the outcome of adoption proceedings, it should be declared unconstitutional." N.E.'s Brief at 13. In particular, N.E. notes that she had "consistent, meaningful, intimate contact as L.D.'s caregiver, guardian, and maternal grandmother[;]" previously had physical and legal custody of him; and was entitled to visitation with L.D. under the 2006 Agreed Entry at the time the Paternal Grandparents filed the Adoption Petition. N.E.'s Brief at 17. Given her close relationship with L.D., both legally and emotionally, N.E. asserts that the adoption statute's failure to require notice to her violates due process.[14] We cannot agree.

■ The Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action which deprives a person of life, liberty, or property without the "process" or "course of law" that is due, that is, a fair proceeding. *Indiana High Sch. Athletic Assoc. v. Carlberg*, 694 N.E.2d 222, 241 (Ind.1997) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865, (1950)). The same analysis is applicable to both federal and state claims. *Id.*

■ "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)); *Mullane*, 339 U.S. at 313, 70 S.Ct. 652. Predicate to any analysis of whether the process provided was fair is a determi-

13. Mother also argues that the service of process in this case constituted a "failure to comport with Due Process under the Fourteenth Amendment[.]" Appellant's Brief at 20. In light of our conclusion that service was adequate in this case, we need not address the constitutional issue.

14. N.E. also contends that the notice provisions in the adoption statutes violate her equal protection rights. But she provides no citation to law or cogent argument in support of that argument. As such, the argument is waived. App. R. 46(A)(8)(a).

nation that the claimant had a protectable life, liberty, or property interest at stake. *Id.* (citing *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Only after the precise nature of the private interest threatened by the State has been identified can we properly evaluate the adequacy of the State's process. *Lehr v. Robertson*, 463 U.S. 248, 257, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

▪▪▪▪ In addition to guaranteeing fair process, the Due Process Clause also provides heightened protection against state interference with certain fundamental rights and liberty interests. *Carlberg*, 694 N.E.2d at 242 (quoting *Reno v. Flores*, 507 U.S. 292, 301–302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) and *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). The Due Process Clause will protect those rights and liberties "so rooted in the traditions and conscience of our people as to be ranked as fundamental" and "implicit in the concept of ordered liberty," such that "neither liberty or justice would exist if they were sacrificed." *Id.* (citations omitted).

Here, the issue presented is whether a grandmother and former guardian has a protectable liberty interest in visitation with her grandchild. N.E. observes that notice is afforded in paternity, dissolution of marriage, legal separation, child in need of services, custody, Grandparent Visitation Act, and termination of parental rights cases to a broader group of persons "interested" in the child involved. N.E.'s Brief at 14–15. She also argues that the adoption act's failure to require notice of adoption proceedings to grandparents violates the policy of Indiana Code Title 31, which is to "recognize the important of family and children in our society[,] recognize the responsibility of the state to enhance the viability of children and family in our society[, and] provide a judicial procedure that … ensures fair hearings[.]"

Nevertheless, our supreme court has already determined that grandparents "do not possess a constitutional liberty interest with their grandchildren."[15] *J.I. v. J.H. (In re K.I.)*, 903 N.E.2d 453, 462 (Ind.2009) (but acknowledging that the Grandparent Visitation Act represents a legislative recognition that " 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.' ") (quoting *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind.Ct.App.1999)). Therefore, N.E. has no protectable liberty interest as L.D.'s grandparent, and her claims under the Due Process Clause and Due Course of Law Clause must fail.[16]

N.E. also appears to argue that the notice provisions in the adoption act are unconstitutional because they do not require notice to her as L.D.'s former guardian,

---

15. Because N.E. has no constitutional liberty interest as a grandparent in visiting with L.D., we need not consider her argument that the Grandparent Visitation Act violates due process and equal protection rights.

16. In the context of the constitutional question, N.E. also discusses the Paternal Grandparents' failure to inform the adoption court of N.E.'s visitation order under the 2006 Agreed Entry and her former guardianship and current grandparent relationship with L.D. But the question before us is the consti-

tutionality of the notice provisions in the adoption act. Because we conclude that, at least on these facts, those provisions are constitutional and that the Paternal Grandparents complied with the notice provisions, the Paternal Grandparents' failure to apprise the adoption court of the existence and nature of N.E.'s relationship with L.D., while appearing callous and self-serving, did not render the statute unconstitutional. And N.E. also has not shown that such conduct violated the adoption statutes.

former legal and physical custodian, and former caretaker.[17] She maintains that the notice required in adoption cases should be similar to the notice required in cases involving the termination of parental rights. But, at the time of the adoption proceedings, the trial court had already considered and terminated the legal relationship N.E. had as the Child's guardian or custodian. We cannot say, and N.E. has not shown, that someone with a former legal relationship to a child has a liberty interest in that child that a grandparent does not. *See In re K.I.*, 903 N.E.2d at 462. Thus, N.E.'s argument must fail. N.E. has not shown that she has a constitutionally protected liberty interest in her relationship with L.D. As such, N.E. is not afforded the full extent of due process rights with regard to the adoption proceedings, and she has not shown that the notice provisions in the adoption statute are unconstitutional as applied to her.

### Issue Four: Grandparent Visitation Act

■ N.E. also contends that the trial court "applied the wrong standard" concerning her rights to grandparent visitation. N.E.'s Brief at 23. Specifically, she argues that the trial court misconstrued the Grandparent Visitation Act to require a petition for visitation to have been filed under the Act before the start of the adoption proceedings. She further observes that the trial court "opined that [N.E. had] failed to avail herself of a statute that precludes those situated as adoptive grandparents from using as a basis to petition the Court for grandparent visitation after the child is adopted [sic]." N.E.'s Brief at 25. Again, we review the trial court's findings and conclusions, to the extent they implicate the Act, using the two-tiered standard of review: wheth-

er the evidence supports the findings and whether the findings support the judgment. *Bowyer*, 882 N.E.2d at 761.

We initially observe that this issue is, in essence, an appeal of the trial court's ruling on N.E.'s request for the court to find the Paternal Grandparents in contempt for phasing out N.E.'s visitation with the Child or, alternatively, to determine "fair and appropriate" visitation between N.E. and the Child. N.E.'s App. at 60. That request was contained in Mother and N.E.'s joint motion to set aside the Decree. N.E. cites to and quotes from the Judgment with regard to the visitation issue. However, the trial court did not specifically and directly address N.E.'s request for visitation.

The relevant part of the Judgment provides:

> Notice to [N.E.], or to her attorney of record, in the custody matter, when the adoption petition was filed was not required under Indiana Code 31–19 et. seq. since [N.E.] was neither a parent nor a guardian at the time even though she has since adopted [Mother] as an adult. [N.E.] is now a legal grandparent. At the time of the Petition, [N.E.] had not yet secured visitation rights under Indiana Code 31–17–5–9. Even if [N.E.] were considered to be a grandparent who had secured visitation rights pursuant to Indiana Code 31–17, such visitation rights do not give rise to the right to notice for a pending adoption.

N.E.'s App. at 24–25. The only part of the Judgment that mentions visitation is the sentence that reads "[N.E.] had not yet secured visitation rights under Indiana Code 31–17–5–9." *Id.* Elsewhere in the record we find a July 17, 2008, order in which the trial court granted N.E. visita-

17. N.E.'s brief does not distinguish between her claims as a grandparent and her claims as a former guardian and custodian and former caretaker.

tion with the Child one day per month in April and May 2008. On November 12, 2008, the court entered a second order regarding visitation, which provided in relevant part only that N.E.'s "parenting time [was] to remain unchanged." N.E.'s App. at 108. But regardless of whether the Judgment directly addressed N.E.'s visitation issue, the trial court had ordered visitation between N.E. and the Child, and the question before us is whether, in light of the Grandparent Visitation Act, this visitation may continue following the Child's adoption by the Paternal Grandparents.

The Grandparent Visitation Act provides the exclusive method for grandparents to seek visitation with a grandchild. *Handshoe v. Ridgway (In re J.E.M.)*, 870 N.E.2d 517, 519 (Ind.Ct.App.2007) (citing *In re Guardianship of Green*, 525 N.E.2d 634, 636 (Ind.Ct.App.1988)). The Act provides that

> [v]isitation rights provided for in [Indiana Code Section 31–17–5–1 or Indiana Code Section 31–17–5–10] of this chapter survive the adoption of the child by any of the following:
>
> (1) A stepparent.
>
> (2) A person who is *biologically related* to the child as:
>
>   (A) a grandparent;
>
>   (B) a sibling;
>
>   (C) an aunt;
>
>   (D) an uncle;
>
>   (E) a niece; or
>
>   (F) a nephew.

Ind.Code § 31–17–5–9 (emphasis added). In other words, whether a grandparent is entitled to visitation under the Act is determined by whether the adoptive parent was formerly a stepparent or someone from a list of persons biologically related to the child. *See id.*

Here, the Paternal Grandparents adopted Father as an infant. As such, the Paternal Grandparents are not biologically related to L.D. Thus, regardless of whether the visitation order in effect before the Decree is considered to be grandparent visitation granted under the Act, N.E. is not entitled to grandparent visitation with L.D. as a matter of law under Indiana Code Section 31–17–5–9.

Although not relevant to our determination on this issue, we pause to note the potential and presumably unintended inequity of Indiana Code Section 31–17–5–9 that is made evident by the particular facts of this case. Here, the Paternal Grandparents have been parents to Father since his infancy. Except for the lack of a biological relationship, they are for all intents and purposes Father's parents and L.D.'s grandparents. Yet, if N.E. had filed a petition to adopt L.D. and that petition had been granted, the Paternal Grandparents would as a matter of law have no visitation rights under the Act because N.E. is not biologically related to L.D., even though they have been lifelong parents to Father. Whether this consequence was intended or should be rectified we leave for the Legislature to decide.

### Conclusion

In sum, Mother's contention that the Paternal Grandparents should have obtained her consent for the adoption is not properly before us, and we dismiss the appeal with respect to this issue. Further, Mother has not shown that service of process by publication in the *Indianapolis Recorder* was inadequate. Nor has N.E. shown that the adoption statute's failure to require that she, as a grandparent, receive notice of the adoption proceeding violates her due process rights in that a grandparent does not have a liberty interest in visitation with her grandchildren. And, finally, N.E. has not shown that she is

entitled to visitation under the Grandparent Visitation Act following entry of the Decree because the adoptive parents, Paternal Grandparents, were neither stepparents nor biologically related to L.D. before the adoption. As such, we affirm the trial court's order denying the motion to set aside the Decree.

Affirmed in part and dismissed in part.

FRIEDLANDER, J., and BRADFORD, J., concur.