**Robert NORRIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 35A02–0001–CR–45.**

Court of Appeals of Indiana.

July 10, 2000.

P. Robert Dawalt, Jr., Marion, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

Robert Norris appeals the denial of his motion to suppress. We reverse.

### ISSUE

Whether the trial court erred in denying Norris' motion to suppress.

### FACTS

On May 18, 1999, at approximately 2:00 p.m., Indiana State Police Trooper Antho-ny Casto apparently called in the license plate number of an Oldsmobile which was being driven on U.S. 224. When he received information that the plate was registered to a Chevrolet, Trooper Casto stopped the Oldsmobile because he believed that it was being driven with a false license plate. There were three men in the car – driver Greg O'Banion, front-seat passenger Chad O'Banion, and back-seat passenger Robert Norris.

Greg accompanied Trooper Casto to Casto's vehicle and explained that he had just purchased the Oldsmobile and had transferred the license plate from his prior vehicle – the Chevrolet – to the Oldsmobile. Trooper Casto verified Greg's story and issued him a warning. As Greg was returning to his vehicle, Trooper Casto asked Greg if he could search the Oldsmobile. Greg gave the trooper consent to search the vehicle.

The trooper asked the two other men to exit the vehicle while he searched it. Trooper Casto began his search with a backpack that was on the backseat of the Oldsmobile next to where Norris had been sitting. The trooper did not attempt to determine which of the men owned the backpack. When he opened the backpack, the trooper found a handgun.

Norris, the owner of the backpack, was charged with possession of a handgun without a license. He filed a motion to suppress the gun as the "fruit of an illegal search." (R. 36). At the hearing on the motion, Trooper Casto testified that he did not have probable cause for the search and that there was no contraband in plain view. According to Trooper Casto, if Greg had declined his request to search the vehicle, the trooper "would have let them go." (R. 75). The trial court found that the "search was made pursuant to consent" and denied the motion. (R. 108). Thereafter, the court convicted Norris of possession of a handgun without a license.

## DECISION

Norris argues that the trial court erred in denying his motion to suppress the handgun. The gravamen of his argument is that Greg's consent to search the Oldsmobile did not include consent to search Norris' backpack. We agree.

■ Review of the denial of a motion to suppress is similar to other sufficiency matters. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

The Fourth Amendment of the United States Constitution provides:

The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

■ The Fourth Amendment protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *State v. Friedel*, 714 N.E.2d 1231, 1237 (Ind.Ct. App.1999). " 'The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes and their belongings.' " *Id.* (citing *People v. James*, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 197–98 (1994) (citing *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979))).

■ For a search to be reasonable under the Fourth Amendment, a warrant is required unless an exception to the warrant requirement applies. *Friedel*, 714 N.E.2d at 1237. Because it is undoubtedly reasonable for the police to conduct a search once they have been permitted to do so, a consensual search is a well-established exception to the warrant requirement. *Id.* at 1239. Even in the absence of probable cause or exigent circumstances, a party may validly consent to a warrantless search. *Id.*

■ A valid consent to a search may be given by either the person whose property is to be searched or by a third party who has common authority over or a sufficient relationship to the premises to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 179, 110 S.Ct. 2793, 2796, 111 L.Ed.2d 148 (1990). Our supreme court has explained common authority as follows:

Common authority is not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that each of the co-inhabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit *the common area* to be searched.

*Brown v. State*, 691 N.E.2d 438, 443 (Ind. 1998) (citations omitted)(emphasis added).

■ The determination whether a valid consent to a search has been given must be judged against an objective standard— would the facts available to the officer at the moment of the search " 'warrant a man of reasonable caution in the belief' " ' that the consenting party had authority over the premises? *Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801, 111 L.Ed.2d at 161 (1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). If the facts and circumstances are such that it would be objectively reasonable to conclude that the person who consented did not have authority to do so, then the police officers' subsequent search would be invalid. 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. The State bears the burden of proving that the officers were objectively reasonable in

their belief that the person who gave consent to the search had the authority to do so. *Rodriguez,* 497 U.S. at 181, 110 S.Ct. at 2797, 111 L.Ed.2d at 156.

Here, the State contends that the "search of [Norris' backpack] was proper because it was objectively reasonable for Casto to believe that he could search a [backpack] that was lying on the backseat of the driver's vehicle." State's Brief, p. 5. In support of its contention, the State directs us to *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), wherein a police officer stopped Jimeno's vehicle for a traffic offense. The officer asked to search Jimeno's vehicle for narcotics, and Jimeno consented to the search. During the search, the officer saw a folded, brown bag on the floor of the vehicle. The officer opened the bag and found cocaine.

The United States Supreme Court framed the issue as "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car." 500 U.S. at 251, 111 S.Ct. at 1804, 114 L.Ed.2d at 303. The Court noted that parameters of a search are usually defined by the purpose of the search and reasoned that "it was objectively reasonable for the police to conclude that the general consent to search [Jimeno's] car included consent to search containers within that car which might bear drugs." *Id.* On this basis, the Court found that the consent to search "extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor." *Id.*

However, we find that the facts in *Jimeno* are readily distinguishable from those before us. Jimeno was the driver of the vehicle. In his capacity as driver, he had the authority to consent to the search of the car because he had possession and control of it. Although there was a passenger in the car, there was no argument that the bag belonged to the passenger rather than Jimeno. Therefore, Jimeno

also had the authority to permit the police to search the bag. The issue was whether Jimeno, having the authority to consent to a search of both the vehicle and the paper bag, intended his consent to search the vehicle to also encompass a search of the bag.

Here, however, Greg did not own Norris' backpack. Further, there is no suggestion that Greg had common possession or control of it. Because Greg did not own or share control of the backpack, the precise issue addressed in *Jimeno* is not before us. Rather, the issue before us is whether Greg's consent to search his vehicle included consent to search the backpack of one of his passengers.

We addressed a similar issue in *Friedel,* 714 N.E.2d at 1231. There, an Indiana State Police trooper stopped the vehicle in which Susan Friedel was a passenger. The male driver consented to a search of the vehicle and the passengers exited it. A Steuben County Sheriff's Department deputy discovered a purse in the back seat of the vehicle next to where Friedel had been sitting, opened it and found marijuana and amphetamines. Friedel was charged with possession of these substances. The trial court granted her motion to suppress the drugs and the State appealed.

In determining that the search of Friedel's purse was unreasonable and unconstitutional, this court stated as follows:

> When the officers decided to search Friedel's purse they knew that it was a woman's handbag and that Friedel was the only woman in the vehicle. They also found the purse on the floor in the back seat where Friedel had been sitting. Under these circumstances, it was unreasonable for the officers to believe that [the driver] had the authority to consent to a search of the purse especially "since a purse is generally not an object for which two or more persons share common use or authority."

*Id.* at 1240–41 (Citations and footnote omitted).

The State attempts to distinguish the facts of *Friedel* from those before us. Specifically, the State contends that "[u]nlike the purse in *Friedel* that clearly did not belong to the male driver, there was no clear indication that the [backpack] in this case did not belong to the driver who gave Trooper Casto consent to search the vehicle." State's Brief, p. 5. However, we do not find this distinction to be dispositive. We find support for our conclusion in *People v. James*, 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195 (1994).

In the *James* case, Delores James was a passenger in a vehicle that was stopped by police officers. The officers directed the driver and passengers to exit the vehicle. James left her purse on the front passenger seat. Although James was not aware of it, the driver of the car consented to a police search of the vehicle. During the search, the officers opened James' purse and found cocaine. James, who was charged with possession of a controlled substance, filed a motion to suppress the cocaine wherein she argued that the driver of the vehicle lacked the authority to consent to a search of her purse. The trial court granted the motion, and the Illinois Court of Appeals reversed. The Illinois Supreme Court allowed James' petition for leave to appeal.

In its review of the case, the supreme court noted that consistent with *Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, decisions from other jurisdictions have generally held that a driver's consent to a search of his vehicle does not extend to an item remaining in the car that belongs to a passenger of the vehicle. *James*, 206 Ill.Dec. 190, 645 N.E.2d at 203. Applying this jurisprudence to the facts before it, the court concluded that the officer who searched the vehicle should have ascertained who owned the purse that he found in the vehicle before he opened it and searched its contents. *Id.* Specifically, the court stated as follows:

In our view, it would have been objectively reasonable for the law enforcement officer to realize that the purse might belong to one of the passengers rather than to [the driver]. A purse is normally carried by a woman, and all of the adult occupants of the vehicle were women. Thus, the purse could have logically belonged to any one of the three adult women in the car. The purse was found on a passenger seat in the car, not on the driver's seat, thereby tending to the conclusion that the purse belonged to the passenger, not the driver. It would have been unreasonable for the officer to believe that [the driver] shared some common use in the purse with one of the passengers in the vehicle, since a purse is generally not an object for which two or more persons share common use and authority. Also, it is uncontradicted that defendant did not know that [the driver] had given her consent to a search of the vehicle.... Given all of these considerations, we conclude that [the officer's] actions were not objectively reasonable and that his search of defendant's purse was therefore invalid.

*Id.*

The facts before us are analogous to those in *James*. Here, Norris was the backseat passenger in a vehicle that was stopped by Trooper Casto. Although Norris was unaware of it, the driver of the car consented to a search of the vehicle. During the search, Trooper Casto opened Norris' backpack and found a handgun. Here, as in *James*, the trooper should have ascertained who owned the backpack he found in Greg's vehicle before he opened and searched it.

Specifically, it would have been objectively reasonable for Trooper Casto to realize that the backpack might belong to one of the passengers rather than to Greg. The backpack was found in the backseat of the vehicle, not in the front seat, thereby tending to the conclusion that the back-

pack belonged to a passenger and not the driver. It would have been unreasonable for the trooper to believe that Greg shared some common use in the backpack with one of the passengers in the vehicle, since a backpack, like the purse in *James*, is generally not an object for which two or more persons share common use and authority. Further, here, as in *James*, Norris did not know that Greg had given the trooper consent to search the vehicle.

Given all of these considerations, we conclude that Trooper Casto's actions were not objectively reasonable and that his search of Norris' backpack was therefore unreasonable.[1] *See also* 3 W. LaFave, *Search and Seizure* § 8.3(g), at 266–67 (2d ed. 1987) ("[U]nder a sound application of the apparent authority rule the police must be required to make reasonable inquiries when they find themselves in ambiguous circumstances. This does not mean that the police must contest every claim of authority.... But sometimes the facts known by the police cry out for further inquiry, and when this is the case it is not reasonable for the police to proceed on the theory that 'ignorance is bliss.'"); *State v. Williams*, 48 Or.App. 293, 616 P.2d 1178 (1980) (consent by owner for search of vehicle did not validate warrantless search of cassette tape case owned by passenger). The trial court therefore erred in denying Norris' motion to suppress.

Reversed.

MATTINGLY, J., and BROOK, J., concur.

---

**1.** In *Callahan v. State*, 719 N.E.2d 430, 439 (Ind.Ct.App.1999), Judge Robb, writing for another panel of this Court, expressed that panel's concern about the "increasingly common practice of police stopping vehicles for minor traffic offenses and seeking consent to search with no suspicion whatsoever of illegal contraband, all in the name of the war on drugs...." We, too, are concerned about this practice.