James E. CLARK, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–0306–CR–224.

Court of Appeals of Indiana.

March 3, 2004.

Mark W. Rutherford, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN,. Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

James Clark ("Clark") has been charged with Class A misdemeanor possession of marijuana in Johnson Superior Court. He filed a motion to suppress the marijuana found during a search of his vehicle after he was stopped for a seatbelt violation. The trial court denied his motion to suppress. Clark has filed this interlocutory appeal arguing that under Indiana Code section 9–19–10–3 and Article One, Section

Eleven of the Indiana Constitution, a law enforcement officer investigating a seatbelt violation is prohibited from requesting and obtaining consent to search a vehicle. Concluding that the trial court abused its discretion when it denied Clark's motion to suppress, we reverse and remand with instructions to grant Clark's motion to suppress.

## Facts and Procedural History

On December 13, 2002, Franklin Police Department Officer Joe Dillon ("Officer Dillon") was on patrol and observed Clark driving without wearing his seatbelt. Officer Dillon began to follow Clark and saw Clark put his seatbelt on. Officer Dillon then initiated a traffic stop, approached Clark's vehicle, and requested his driver's license and registration. Clark produced his driver's license, but did not have the vehicle registration. Officer Dillon noted that Clark appeared to be "unusually nervous." Tr. p. 7.

After confirming that the vehicle was registered, Officer Dillon returned Clark's license to him and gave him a warning ticket. Officer Dillon also asked Clark if he had anything illegal in the vehicle. Tr. p. 7. Clark responded that he did not. Officer Dillon then asked if he could take "a quick look in his car." Tr. p. 8. Clark said that that would be all right, but stated that his vehicle was running low on gas, which Officer Dillon confirmed. Therefore, Officer Dillon offered to follow Clark to a gas station and "take a quick look at his car" while Clark was purchasing gas. Tr. p. 8. Clark and Officer Dillon then drove to a nearby gas station.

When they arrived at the gas station, Clark exited his vehicle and told Officer Dillon that he could "go ahead and look."

Tr. p. 10. Dillon proceeded to search the vehicle and found a plastic bag of marijuana inside the glove box. Clark was subsequently charged with Class A misdemeanor of possession of marijuana.

On February 25, 2003, Clark moved to suppress the marijuana. A hearing was held on his motion on March 25, 2003. At the hearing, Clark's counsel argued that Officer Dillon's search of Clark's vehicle was in violation of Indiana Code section 9–19–10–3 and Article One, Section Eleven of the Indiana Constitution.[1] On April 14, 2003, the trial court denied Clark's motion to suppress, but later certified its order for interlocutory appeal. Our court accepted jurisdiction of Clark's appeal on July 21, 2003.

## Standard of Review

A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Goodner v. State*, 714 N.E.2d 638, 641 (Ind.1999). Additionally, our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. *Simmons v. State*, 781 N.E.2d 1151, 1154 (Ind.Ct.App.2002). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* Rather, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted. *State v. Glass*, 769 N.E.2d 639, 641 (Ind.Ct.App. 2002), *trans. denied.*

## Discussion and Decision

██. Clark argues that the search of his vehicle violated Article One, Section

---

1. In his motion to suppress, Clark also argued that the search was conducted in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Appellant's App. p. 42.

Eleven of the Indiana Constitution.[2] Under that Section, the State is required to show that, in the totality of the circumstances, the intrusion was reasonable. *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999) (citing *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995)). Generally, where a law enforcement officer reasonably suspects that the individual is engaged in, or about to engage in illegal activity, a brief police detention of that individual is reasonable. *Id.* (citing *Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind. Ct.App.1994)). "Reasonable suspicion exists where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Id.* (citing *Taylor*, 639 N.E.2d at 1054).

 We also observe that "[t]he purpose of Article One, Section Eleven is to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown*, 653 N.E.2d at 79. Further, Section Eleven "must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure." *Id.* Our supreme court has acknowledged that "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Id.* at 80. The court has also indicated that it is "extremely hesitant to countenance their casual violation, even by law enforcement officers who are attempting to solve serious crimes." *Id.* at 80 n. 3.

In *Baldwin*, our supreme court addressed a challenge to the constitutionality of the Indiana Seatbelt Enforcement Act. Specifically, the plaintiffs argued that Indiana Code section 9–19–10–3 violated Article One, Section Eleven of the Indiana Constitution because it authorized law enforcement officers to stop vehicles without probable cause. *Baldwin*, 715 N.E.2d at 336. The court disagreed and concluded that the statute could be constitutionally applied because under Article One, Section Eleven law enforcement officers may only stop motorists where they have a reasonable suspicion that a seatbelt violation has occurred. *Id.* at 337.

Indiana Code section 9–19–10–3 provides: "A vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of this chapter."[3] In *Baldwin*, the plaintiffs argued that the phrase "to determine compliance" provided law enforcement officers with unrestrained discretion to stop motorists to determine whether they were wearing their seatbelts. *Id.* at 338. In response to that argument, the Court noted the Attorney General's assertion that the General Assembly intended to limit, rather than expand, police authority when it passed the seatbelt law. *Id.* "More specifically, the legislature's principal concern could have been circumscribing the power of police to use a seatbelt stop as an opportunity to inspect, search, or detain on

---

2. Article One, Section Eleven of the Indiana Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

3. In *Baldwin*, the court observed that this section was amended twice during the 1998 session of the General Assembly. *Id.* at 339. The court determined that because there was a conflict between the sections, the one subsequently passed prevailed. *Id.* at 340.

other grounds, even if federal constitutional law would permit such a stop." [4] *Id.*

The court then noted that under the Attorney General's interpretation of the statute, the second sentence of section 9–19–10–3 "is of prime importance" and "the first sentence is no more than an introduction." *Id.* at 339.

> Read this way, the statute requires that when a stop to determine seat belt law compliance is made, the police are strictly prohibited from determining anything else, even if other law would permit. *The Attorney General emphasized this point at oral argument by saying that he thought the statute could be read to prohibit a police officer making a seat belt stop from even asking the driver for consent to search the vehicle or its occupants.*

*Id.* (emphasis added). The court then observed:

> Although the consent issue is not before us today, we are inclined to think that this view is consistent with the statute's language that "a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained solely because of a violation of" a seat belt stop.

*Id.* at 339 n. 8. The court concluded that the Attorney General's interpretation of the statute, i.e. that the General Assembly intended to provide motorists with protection from pretextual seatbelt searches and seizures previously sanctioned under federal law, was "reasonable and constitutional." *Id.*

In *State v. Morris,* 732 N.E.2d 224 (Ind. Ct.App.2000), our court addressed a challenge to the search of a vehicle made subsequent to a traffic stop for a seatbelt violation. In that case, during the traffic stop, the officer discovered that Morris' driver's license had been suspended. *Id.* at 226. After the officer asked Morris to step out of the vehicle, he also noted the odor of alcoholic beverage on Morris' breath. *Id.* A chemical breath test revealed that Morris' breath alcohol content was 0.10. *Id.*

After he was charged with driving while suspended and Class D felony operating a vehicle while intoxicated, Morris successfully moved to suppress the evidence of his license suspension and intoxication. *Id.* Morris argued that the evidence was obtained in violation of the Seatbelt Enforcement Act. *Id.* On appeal, we initially observed that under *Baldwin* and the plain language of the statute, a traffic stop based on the failure of either a driver or passenger to wear a seatbelt does not, standing alone, "provide reasonable suspicion for the police to unilaterally expand their investigation and 'fish' for evidence of other possible crimes." *Id.* at 228. However, we concluded:

> when circumstances arise after the initial stop that create reasonable suspicion of other crimes, further reasonable inspection, search, or detention is no longer "solely" because of a seatbelt violation and does not contravene the plain language of the statute. The officer may only expand his or her investigation subsequent to the stop if other circumstances arise after the stop, which independently provide the officer with reasonable suspicion of other crimes.

---

**4.** The court noted the United States Supreme Court's 1996 decision in *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), in which the Supreme Court held that the Fourth Amendment does not restrict the ability of law enforcement officers to make "pretextual" stops of motorists, i.e. "stops where the police do 'under the guise of enforcing the traffic code what they would like to do for other reasons.'" *Id.* (citing *Whren,* 517 U.S. at 814, 116 S.Ct. 1769).

*Id.* (citations omitted). *See also Trigg v. State,* 725 N.E.2d 446, 449 (Ind.Ct.App. 2000) (Indiana Code section 9–19–10–3 "cannot reasonably be interpreted to prohibit police officers from concluding limited weapons searches to ensure their safety so long as circumstances exist over and above the seatbelt violation itself.").[5]

In his concurring opinion in *Morris,* Judge Friedlander observed that the Seatbelt Enforcement Act "carries with it the potential for significant incursion upon the rights against unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution and article I, section 11 of the Indiana Constitution." 732 N.E.2d at 229 (Friedlander, J., concurring). Further, noting the *Baldwin* decision, the General Assembly's enactment of section 9–19–10–3, and the Attorney General's interpretation of the statute, he stated, "all three branches of government seem to be in accord that challenges to searches arising under the Seatbelt Law must be considered with this heightened risk of erosion of freedom in mind." *Id.* Our court has often expressed similar concern with "the increasingly common practice of police stopping vehicles for minor traffic offenses and seeking consent to search with no suspicion whatsoever of illegal contraband[.]" *Callahan v. State,* 719 N.E.2d 430, 439 (Ind.Ct.App. 1999); *see also Camp v. State,* 751 N.E.2d 299, 302 (Ind.Ct.App.2001), *trans. denied; Norris v. State,* 732 N.E.2d 186, 191 n. 1 (Ind.Ct.App.2000).

■ In this case, when he initiated the traffic stop, Officer Dillon only had reasonable suspicion to believe that Clark had committed a seatbelt violation. Aside from the seatbelt violation, the State does not argue, and we do not find, that there were any facts known to Officer Dillon that would have reasonably led him to believe that criminal activity had occurred or was about to occur when he asked for consent to search the vehicle.[6] Accordingly, pursuant to *Baldwin,* and under the facts and circumstances before us in this case, we hold that during and after the seatbelt stop, without independent, reasonable suspicion of another crime by Clark, Officer Dillon was prohibited from seeking consent to search Clark's vehicle. The search at issue therefore violated Article One,

---

5. In *Trigg,* during a traffic stop for failure to wear a seatbelt, the officer observed that the defendant "became very nervous and fidgeted in his seat as if trying to hide or retrieve something." 725 N.E.2d at 449. The defendant's actions caused the officer to believe that Trigg was reaching for a weapon. "The officer's belief, and therefore, his subsequent request that Trigg step out of the car so that he could perform a patdown search for weapons, were reasonable under the circumstances." *Id.*

6. In its brief, the State argues that "the fact that the initial stop was due to a seatbelt violation is immaterial.... The search here was done pursuant to Defendant's valid consent and not because of the seatbelt violation." Br. of Appellee at 4. Further, the State contends that prior to asking for consent to search the vehicle, the traffic stop for the seatbelt violation was completed and Clark was free to leave; therefore, "[w]hat had been a traffic stop had segued into a consensual encounter." Br. of Appellee at 7. "Thus, the traffic stop due to the seatbelt violation has no bearing on the propriety of the later consent to search." *Id.* While we agree that the traffic stop was essentially completed at the time Officer Dillon requested consent to search, Dillon's opportunity to request such consent arose solely by virtue of the fact that Clark had been stopped for a seatbelt violation. Contrary to the State's argument, this case does not turn on the timing of the request for consent to search, but the fact such consent was sought as a result of a traffic stop solely for a seatbelt violation. We also reiterate that, when additional circumstances warrant, police officers are clearly entitled to conduct limited weapons searches to ensure their safety.

Section Eleven of the Indiana Constitution and the trial court abused its discretion in denying Clark's motion to suppress.[7]

Reversed and remanded with instructions to grant Clark's motion to suppress.

SHARPNACK, J., and VAIDIK, J., concur.

7. Because we find Clark's challenge under the Indiana Constitution to be dispositive, it is unnecessary for us to address his challenge under the Fourth Amendment of the United States Constitution.