**STATE of Indiana, Appellant–Plaintiff,**

v.

**Raymond L. WASHINGTON, Jr., Appellee–Defendant.**

No. 02A03–0703–CR–124.

Court of Appeals of Indiana.

Oct. 22, 2007.

279

Steve Carter, Attorney General of
Indiana, Cynthia L. Ploughe, Deputy At-
torney General, Indianapolis, IN, Attor-
neys for Appellant.

David L. Joley, Deputy Public Defender,
Fort Wayne, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

The State of Indiana appeals the trial
court's order that granted Raymond L.
Washington, Jr.'s motion to suppress mari-
juana that was seized from his pocket dur-
ing a traffic stop. The sole restated issue
is whether, when a person is stopped for a
traffic infraction and there are no indicia
of criminal activity, the police officer vio-
lates Article 1, Section 11 of the Indiana
Constitution against unreasonable

searches and seizures when he asks the individual if he is in possession of drugs.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. On the afternoon of July 23, 2006, Washington, then twenty-seven years old, and a friend were operating their respective mopeds on Central Street in Fort Wayne. The street had no centerline markings on the pavement. Officer Chris Hoffman of the Fort Wayne Police Department was traveling the opposite direction on Central Street, toward the mopeds. Officer Hoffman observed that the mopeds were swerving and crossing what he perceived to be the center point of the road. Officer Hoffman believed Washington to be under eighteen years of age, and Indiana law requires riders of that age to wear goggles and a helmet, which Washington was not.[1]

Officer Hoffman initiated a traffic stop when he pulled his squad car in front of the mopeds and "blurped" his siren a few times. *Tr.* at 6. Washington immediately stopped his moped. The other rider, however, traveled around Officer Hoffman's car, but another squad car arrived at the scene and stopped Washington's friend, such that two marked police vehicles were present at the scene.

Officer Hoffman exited his car and approached Washington, explaining to him that he was stopped because he crossed the center line of the road multiple times and because he appeared under eighteen years of age and was not wearing goggles

or a helmet. Officer Hoffman noted that Washington "appeared to be nervous" by not looking directly at him and by speaking slowly in response to the officer's questions. *Tr.* at 7–8. Because of this nervousness, Officer Hoffman asked Washington, if he had "any guns, drugs, or anything" on his person that might harm the officer.[2] *Id.* Washington responded that he had "a couple of dime bags" in his front pocket. *Id.* at 8–9. At Officer Hoffman's request, Washington gave the officer permission to remove the bags. Officer Hoffman then placed Washington in handcuffs and seated him in his police car.

The State charged Washington with Class A misdemeanor possession of marijuana.[3] Washington moved to suppress the marijuana on the basis that his constitutional rights were violated when Officer Hoffman asked him if he had drugs, which were then seized and ultimately resulted in criminal charges. The trial court held a hearing and, after receiving briefs from both parties on the issue, the trial court granted Washington's motion. The State dismissed the possession charge shortly thereafter. The State now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In this appeal, the State challenges the order granting Washington's motion to suppress. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *State v. Lefevers,* 844

---

1. *See* IC 9–21–10–9 (person less than eighteen who is operating motorcycle shall wear protective headgear and goggles); *Chapman v. State,* 650 N.E.2d 764, 765–66 (Ind.Ct.App. 1995) (recognizing moped as subspecies of category of motorcycles).

2. Officer Hoffman explained that if he feels there is something odd or unusual about a traffic stop, his typical or routine question is, "Do you have any guns, drugs, or anything that may harm me?" *Tr.* at 15.

3. *See* IC 35–48–4–11.

N.E.2d 508, 512 (Ind.Ct.App.2006), *trans. denied.* In order to prevail on appeal, the State must show the trial court's ruling on the suppression motion was contrary to law. *State v. Stickle,* 792 N.E.2d 51, 53 (Ind.Ct.App.2003), *trans. denied.* We accept the factual findings of the trial court unless they are clearly erroneous. *Id.* In reviewing the trial court's decision, we consider the evidence most favorable to the ruling together with any adverse evidence that is uncontradicted.[4] *Id.*

As a preliminary matter, we observe that this court has expressed its concern over " 'the increasingly common practice of police stopping vehicles for minor traffic offenses and seeking consent to search with no suspicion whatsoever of illegal contraband[.]' " *Clark v. State,* 804 N.E.2d 196, 201 (Ind.Ct.App.2004) (quoting *Callahan v. State,* 719 N.E.2d 430, 439 (Ind.Ct. App.1999)); *see also Camp v. State,* 751 N.E.2d 299, 302 (Ind.Ct.App.2001), *trans. denied* (2002); *Norris v. State,* 732 N.E.2d 186, 191 n. 1 (Ind.Ct.App.2000). We now take the opportunity to address the propriety of that increasingly common practice of officers asking about the presence of illegal substances during an otherwise routine traffic stop.

The State maintains that the question did not violate either Washington's state or federal constitutional rights, and therefore the trial court erred when it granted his motion. Because we find that the officer's question violated Washington's protections under the Indiana Constitution, it is not necessary for us to analyze the matter under the Fourth Amendment to the United States Constitution. *See State v. Quirk,* 842 N.E.2d 334, 339 (Ind.2006) (declining to respond to federal constitutional argument and responding only to defendant's state Article 1, Section 11 claim);

*Clark,* 804 N.E.2d at 202 n. 7 (unnecessary to address Fourth Amendment claim because state constitutional claim was dispositive).

## II.   Indiana Constitution

▇▇▇ IC 34–28–5–3 permits an officer to detain a person who he in good faith believes has committed an infraction or ordinance violation for a time sufficient to inform him of the allegation, obtain his name, address, and date of birth or his driver's license, and allow him to execute a notice to appear.   As all parties agree, Officer Hoffman observed Washington swerving and not wearing goggles or a helmet, and he was entitled to detain Washington for a time sufficient to complete the purpose of the traffic stop. *Quirk,* 842 N.E.2d at 340 (police may stop a vehicle when they observe minor traffic violations).   The inquiry here is whether Officer Hoffman's question to Washington concerning the drugs was permissible under the Indiana Constitution.

Article 1, Section 11 of the Indiana Constitution protects against unreasonable searches and seizures.   It reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated;   and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

▇▇▇ The purpose of Article 1, Section 11 is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Clark,* 804 N.E.2d at 199 (quotations omitted).   In resolving challenges asserting a Section 11 violation,

---

4.   In the present case, the only evidence presented was the testimony of Officer Hoffman;

thus, there was no competing evidence to be weighed.

courts must consider the circumstances presented in each case to determine whether the police behavior was reasonable. *Quirk,* 842 N.E.2d at 340. We place the burden on the state to show that under the totality of the circumstances its intrusion was reasonable. *Id.* Our courts have recognized that Section 11 " 'must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure.' " *Clark,* 804 N.E.2d at 199 (quoting *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995)). Accordingly, we must determine here whether Officer Hoffman's inquiry was reasonable under the totality of the circumstances.

Section 11 permits an officer, during an investigatory stop, to detain a motorist briefly only as necessary to complete the officer's work related to the illegality for which the motorist was stopped. *Quirk,* 842 N.E.2d at 340. Where an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration, a license plate check, a request to search the vehicle, and an inquiry regarding whether the driver has a weapon in the vehicle are within the scope of reasonable detention. *Id.* It is the further inquiry of asking the driver whether he possessed drugs that troubles us here.

Officer Hoffman explained that he asked Washington whether he had any "guns or drugs," because Washington appeared nervous and did not make eye contact with him. *Tr.* at 7–8. It is true that nervousness may indicate potential wrongdoing. *Quirk,* 842 N.E.2d at 341. However, Indiana courts have been hesitant to assign significant weight to a person's display of nervousness. *Id.* Indeed, our

Indiana Supreme Court has observed, "Because it is not at all unusual that a citizen may become nervous when confronted by law enforcement officials, other evidence that a person may be engaged in criminal activity must accompany nervousness before the nervousness will evoke suspicion necessary to support detention." *Id.*

Certainly, we recognize the concern for officer safety, and, to that end, Indiana courts have acknowledged the appropriateness of, during the course of a traffic stop, asking about the presence of guns. *Lockett v. State,* 747 N.E.2d 539, 543 (Ind.2001) (officer may as matter of routine practice ask driver stopped for traffic violation if he has a weapon on his person or in his vehicle); *Jarrell v. State,* 818 N.E.2d 88, 92 (Ind.Ct.App.2004), *trans. denied* (2005) (where weapon was found following general *Lockett*-type inquiry that asked whether there was anything in the vehicle that the officer should know about, no Fourth Amendment violation occurred).[5] However, in the context of this afternoon traffic stop of a moped for a traffic infraction, which presented no indications of drugs or other criminal activity, Officer Hoffman's inquiry that asked Washington whether he possessed drugs was not related either to the purpose of the stop or to officer safety. The State urges that because the question did not extend the length of the stop, it was not an intrusion of constitutional dimension. While we concede that Officer Hoffman's inquiry was minimal in terms of duration, it nevertheless extended the duration of the stop. Of greater significance, however, is the fact that to allow police to routinely question individuals during a traffic stop about the presence of drugs

---

**5.** The *Jarrell* court was careful to narrowly tailor its holding, noting that the admissibility of other non-weapon types of contraband seized as a result of a general type of police inquiry (i.e. "Is there anything in the vehicle I should know about?") was not the issue before the court. 818 N.E.2d at 92. It is precisely the inquiry about and seizure of that non-weapon type of contraband that we concern ourselves with today.

would open the door to all sorts of inquiries, including whether the person cheated on his last year's tax return or had in the past illegally pirated music from the internet. While tax fraud and internet piracy are—like illegal drug possession—serious concerns, routine traffic stops are not the place for such inquiries.

■ We do not overlook the principle that when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable, *Ammons v. State*, 770 N.E.2d 927, 933 (Ind.Ct.App.2002), *trans. denied,* and, here, Officer Hoffman asked and received permission to remove the marijuana from Washington's pocket. Whether Washington's consent was legally voluntary is debatable; however, we do not reach the issue of the voluntariness of Washington's consent because it is the inquiry about drugs, which *preceded* the consent, that today we find unreasonable and unconstitutional under Article 1, Section 11. The fact that Washington thereafter allowed the officer to take the marijuana does not remedy the prior constitutional violation. We believe this holding is in accord with the line of reasoning followed by our colleagues in *Clark*, where this court reversed the denial of a motion to suppress and held that police officers are prohibited under the Article 1, Section 11 of the Indiana Constitution from seeking consent to search a vehicle during and after a traffic stop for a seatbelt violation, absent independent, reasonable suspicion of another crime. 804 N.E.2d at 201–02.

We conclude that under the totality of the circumstances Officer Hoffman's inquiry that asked whether Washington had any drugs on him or with him was unreasonable within the meaning of Article 1, Section 11 of the Indiana Constitution. Consequently, the trial court properly granted Washington's motion to suppress

the marijuana seized during the traffic stop.

Affirmed.

ROBB, J., concurs.

BARNES, J., dissents with separate opinion.

BARNES, Judge, dissenting.

I respectfully dissent. The question of whether a police officer can ask a motorist stopped for a traffic violation questions unrelated to the initial reason for the stop, aside from questions related to weapons, appears to be one of first impression in Indiana. The case law from other jurisdictions is mixed on this point, but I would side with those cases holding that police officers generally may ask such questions.

Regarding the Fourth Amendment, I acknowledge that there are cases from some federal and state courts holding that police generally may not ask motorists stopped for a traffic violation questions unrelated to the reason for the stop. *See, e.g., U.S. v. Holt,* 264 F.3d 1215, 1230 (10th Cir.2001) (rejecting government's position that police officers may ask any questions during course of traffic stop, regardless of whether it extends the length of the stop). There are, however, a number of cases holding directly the opposite. *See, e.g., U.S. v. Childs,* 277 F.3d 947, 954 (7th Cir.2002), *cert. denied* (holding the Fourth Amendment did not prohibit police from asking stopped motorist whether he was in possession of any marijuana); *U.S. v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993) ("we reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation.").

The United States Supreme Court has yet to address this issue directly. It has, however, held that the Fourth Amendment

does not prohibit police from using a narcotics-detection dog during a lawful traffic stop, even in the complete absence of reasonable suspicion, so long as the canine sweep does not extend the length of the traffic stop. *Illinois v. Caballes*, 543 U.S. 405, 409–10, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005). The Court distinguished its holding from a recent case in which it had banned the use of thermal imaging devices to search inside a home, because such a search could reveal legal as well as illegal activity. It stated, "The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car." *Id.* at 410, 125 S.Ct. at 838.

In my view, *Caballes* is an indication that the Supreme Court would approve of police officers asking questions regarding illegal contraband during the course of a traffic stop, even if they have no reasonable suspicion to support such a question. The use of a drug dog during a traffic stop has a much higher potential for citizen intimidation and public embarrassment than does merely asking a question. Moreover, unlike a dog sniff, a person who simply is asked whether there are any drugs in his or her possession has the option of not answering, or answering falsely, and terminating the investigation at that point. A dog sniff, on the other hand, ends only when the dog completes its sweep and either alerts or does not alert. *Caballes,* as well as the reasoning expressed in cases such as *Childs* and *Shabazz,* convinces me that the Fourth Amendment does not require police to have reasonable suspicion of illegal activity before they may ask a motorist detained during a legal traffic stop whether they are in possession of any drugs, so long as such questioning does not materially affect the length of the detention.

I do not believe Article 1, Section 11 of the Indiana Constitution requires a different result. An examination of the legality of police conduct under Article 1, Section 11 turns on a balancing of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the police conduct imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). Ultimately, "[t]he legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* at 359.

There apparently was no suspicion here that Washington was in possession of drugs when Officer Hoffman asked him whether he was. However, the degree of intrusion caused by asking the question was minor, in comparison to the fact that Washington already was legitimately stopped for observed traffic violations when the question was asked. Although it was discussing the Fourth Amendment, I believe what the Seventh Circuit said in *Childs* also demonstrates the reasonableness of the police conduct here under the Indiana Constitution:

> Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public— for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent....
>
> ....
>
> ... What happened here must occur thousands of times daily across the nation: Officers ask persons stopped for

traffic offenses whether they are committing any other crimes. That is not an unreasonable law-enforcement strategy, either in a given case or in gross; persons who do not like the question can decline to answer. Unlike many other methods of enforcing the criminal law, this respects everyone's privacy.

*Childs*, 277 F.3d at 954.

I believe it is reasonable under the Indiana Constitution for police officers to ask motorists already legitimately stopped for a traffic offense whether they are in possession of any illegal contraband, provided such questioning does not materially extend the length of the stop.[6] In my view, Officer Hoffman's question to Washington was permissible, legitimate policing inquiry, and constitutionally sound. I vote to reverse the granting of the motion to suppress.

---

6. I also do not believe, unlike the majority, that this court's earlier decision in *Clark v. State*, 804 N.E.2d 196 (Ind.Ct.App.2004), is relevant. Although the case does mention Article 1, Section 11, its result ultimately turned upon application of the seatbelt enforcement statute, Indiana Code Section 9–19–10–3 (now Section 9–19–10–3.1), and interpretation of that statute by our supreme court and the attorney general. *See Clark*, 804 N.E.2d at 200–01. Washington was not stopped for a seatbelt violation.