Torin **HERBERT**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A04–0712–CR–748.

Court of Appeals of Indiana.

July 25, 2008.

---

Thomas J. O'Brien, O'Brien & Dekker, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Torin Herbert appeals his convictions for class A felony dealing in cocaine, class D felony dealing in marijuana, and class D felony maintaining a common nuisance. We affirm.

### Issues

I.  Did the trial court abuse its discretion in admitting evidence seized following a traffic stop?

II.  Did the trial court abuse its discretion in excluding the testimony of Herbert's witness regarding the tinting of his car windows?

### Facts and Procedural History

The facts most favorable to the jury's verdict indicate that around 6:30 p.m. on January 18, 2007, Tippecanoe County Sheriff's Deputy Andrew Heath was patrolling in his marked police cruiser when he noticed a car with windows tinted so darkly that he could not tell "who was in the vehicle or how many." Tr. at 127. Indiana Code Section 9–19–19–4(c) provides,

A person may not drive a motor vehicle that has a:

(1) windshield;

(2) side wing;

(3) side window that is part of a front door; or

(4) rear back window;

that is covered by or treated with sunscreening material or is tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle. However, it is a defense if the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the non-film side and light transmittance of at least thirty percent (30%) in the visible light range.

Based on the darkness of the car's window tint, Deputy Heath initiated a traffic stop.

Deputy Heath shone his spotlight on the car. As he approached the driver's side, he "still couldn't tell who was in the vehicle." Tr. at 131. Deputy Heath asked Herbert, the driver, to roll down the rear window so that he "could tell if anybody was on the inside of the vehicle at the rear seat just so [he] could see what that person was doing." Id. Deputy Heath asked Herbert for his driver's license and registration and asked the two passengers for identification. Deputy Heath asked all three persons to exit the car and requested the assistance of a narcotics detection canine. Officer Albert Demello and his canine responded to Deputy Heath's request.

Deputy Heath asked Herbert if he had any "dangerous weapons on him." Id. at 135. Herbert said no. Deputy Heath then asked Herbert if he had "any illegal narcotics or contraband in the vehicle[.]" Id. Herbert initially said no, but once Deputy Heath advised him that a narcotics detection canine "would be walked around his vehicle[,]" Herbert admitted that "there was a little bit of weed under the driver's seat." Id. Officer Demello's canine indicated the presence of contraband on the driver's side of the car. Officer Demello reached under the driver's seat and found a bag containing 108.27 grams of marijuana. Herbert was arrested and transported to the county jail, where an officer strip-searched him and found a bag containing 17.7 grams of cocaine between his buttocks.

The State charged Herbert with class A felony dealing in cocaine, class A felony possession of cocaine, class D felony dealing in marijuana, class D felony possession of marijuana, and class D felony maintaining a common nuisance. Herbert filed a motion to suppress the drug-related evidence, which the trial court denied. A jury trial commenced on October 23, 2007. Herbert made a continuing objection to the drug-related evidence based on the arguments raised in his motion to suppress. The trial court overruled the objection. On October 24, 2007, the jury found Herbert guilty as charged. On November 16, 2007, the trial court merged the possession counts with the dealing counts and sentenced Herbert to thirty-three years.

## Discussion and Decision

### I. Admission of Evidence

■ Herbert contends that the trial court erred in admitting evidence regarding the marijuana found in his car and the cocaine found on his person after his arrest. "The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Robertson v. State*, 877 N.E.2d 507, 512

(Ind.Ct.App.2007) (citation omitted). "We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. We also consider uncontroverted evidence in the defendant's favor." *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App.2007) (citation omitted).

■■■ Herbert's arguments regarding the admissibility of the drug-related evidence are premised on Article 1, Section 11 of the Indiana Constitution, which provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"The purpose of Article One, Section 11 is to protect from unreasonable police activity, those areas of life that Hoosiers regard as private." *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995). "Section 11 'must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure.'" *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001) (quoting *Brown*, 653 N.E.2d at 79). The State bears "the burden of showing that, in the totality of the circumstances, the intrusion was reasonable." *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999).

■■ Our supreme court has stated that Article 1, Section 11 "permits police to stop and briefly detain a motorist if the officer reasonably suspects that the motorist is engaged in, or about to engage in, illegal activity" and that there is "nothing unreasonable in permitting an officer, who may have knowledge or suspicion of unrelated criminal activity by the motorist, to nevertheless respond to an observed traffic violation." *Mitchell*, 745 N.E.2d at 787. A traffic stop "is lawful if there is an objectively justifiable reason for it, and the stop may be justified on less than probable cause." *Ransom v. State*, 741 N.E.2d 419, 421 (Ind.Ct.App.2000), *trans. denied* (2001).

> Our supreme court has also stated that Section 11 permits an officer, during an investigatory stop, to detain a motorist briefly only as necessary to complete the officer's work related to the illegality for which the motorist was stopped. Where an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration, a license plate check, a request to search the driver's vehicle and an inquiry regarding whether the driver has a weapon in the vehicle are within the scope of reasonable detention.

*State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006) (citation omitted).

Here, Deputy Heath stopped Herbert's car based on a suspected violation of Indiana Code Section 9–19–19–4(c).[1] Dep-

---

1. Herbert does not specifically assert that Deputy Heath's suspicion was unreasonable, claiming only that the deputy "had no formal training in terms of identifying whether a window had a tint that was too dark." Appellant's Br. at 12. We do not believe that formal training is required to determine whether a window's tint is so dark "that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle." Ind.Code § 9–19–

19–4(c). To the extent Herbert contends that the traffic stop was unreasonable because Deputy Heath "did not possess any instrument or device to determine whether or not the window tint on Herbert's vehicle was legal[,]" Appellant's Br. at 13, we disagree. The plain language of Indiana Code Section 9–19–19–4(c) indicates that once an officer determines that a motorist's window is tinted such "that the occupants of the vehicle cannot be easily identified or recognized through that

uty Heath asked Herbert for his driver's license and registration, asked him to exit the car, and asked if he had any "dangerous weapons on him." Tr. at 135. Herbert does not specifically challenge the constitutionality of these actions. Herbert does contend, however, that Deputy Heath violated Article 1, Section 11 in asking him whether "he had any illegal narcotics or contraband in the vehicle" without any reasonable and articulable suspicion that he possessed such items. *Id.*

Herbert relies on *State v. Washington,* 875 N.E.2d 278 (Ind.Ct.App.2008), *trans. granted,* in which a police officer stopped the defendant's moped for suspected traffic violations and asked him if he had any guns, drugs, or items on his person that might harm the officer. Washington replied that he had " 'a couple dime bags' in his front pocket" and, upon request, gave the officer permission to remove them. 875 N.E.2d at 280. The State charged Washington with marijuana possession, and he moved to suppress the marijuana on the basis that the officer violated his constitutional rights by asking him if he had drugs. The trial court granted Washington's motion to suppress.

In addressing the State's appeal, the *Washington* majority held that such an inquiry is "unreasonable and unconstitutional under Article 1, Section 11." *Id.* at 283. The majority noted that the traffic stop of Washington's moped "presented no indications of drugs or other criminal activity" and attached considerable significance to

the fact that to allow police to routinely question individuals during a traffic stop about the presence of drugs would open the door to all sorts of inquiries, including whether the person cheated on his last year's tax return or had in the past illegally pirated music from the internet. While tax fraud and internet piracy are—like illegal drug possession—serious concerns, routine traffic stops are not the place for such inquiries.

*Id.* at 282–83. Consequently, the majority upheld the trial court's suppression of the marijuana seized during the traffic stop of Washington's moped.

Judge Barnes dissented, stating that although the law from other jurisdictions was "mixed" regarding "whether a police officer can ask a motorist stopped for a traffic violation questions unrelated to the initial reason for the stop," he "would side with those cases holding that police officers generally may ask such questions." *Id.* at 283 (Barnes, J., dissenting). Judge Barnes went on to say,

Regarding the Fourth Amendment, I acknowledge that there are cases from some federal and state courts holding that police generally may not ask motorists stopped for a traffic violation questions unrelated to the reason for the stop. *See, e.g., U.S. v. Holt,* 264 F.3d 1215, 1230 (10th Cir.2001) (rejecting government's position that police officers may ask any questions during course of traffic stop, regardless of whether it extends the length of the stop). There are, however, a number of cases holding

window from outside the vehicle[,]" it is the motorist's burden to establish as a defense that "the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of at least thirty percent (30%) in the visible light range." Finally, as for Herbert's claim that the traffic stop

was pretextual and thus unconstitutional, our supreme court has stated that it is "not unreasonable for a motorist who commits a traffic law violation to be subject to accountability for said violation even if the officer may have an ulterior motive of furthering an unrelated criminal investigation." *Mitchell,* 745 N.E.2d at 787.

directly the opposite. *See, e.g.,* *U.S. v. Childs,* 277 F.3d 947, 954 (7th Cir.2002), *cert. denied* (holding the Fourth Amendment did not prohibit police from asking stopped motorist whether he was in possession of any marijuana); *U.S. v. Shabazz,* 993 F.2d 431, 436 (5th Cir.1993) ("we reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation.").

The United States Supreme Court has yet to address this issue directly. It has, however, held that the Fourth Amendment does not prohibit police from using a narcotics-detection dog during a lawful traffic stop, even in the complete absence of reasonable suspicion, so long as the canine sweep does not extend the length of the traffic stop. *Illinois v. Caballes,* 543 U.S. 405, 409–10, 125 S.Ct. 834, 838, 160 L.Ed.2d 842 (2005). The Court distinguished its holding from a recent case in which it had banned the use of thermal imaging devices to search inside a home, because such a search could reveal legal as well as illegal activity. It stated, "The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband in the trunk of his car." *Id.* at 410, 125 S.Ct. at 838.

In my view, *Caballes* is an indication that the Supreme Court would approve of police officers asking questions regarding illegal contraband during the course of a traffic stop, even if they have no reasonable suspicion to support such a question. The use of a drug dog during a traffic stop has a much higher potential for citizen intimidation and public embarrassment than does merely asking a question. Moreover, unlike a dog sniff, a person who simply is asked

whether there are any drugs in his or her possession has the option of not answering, or answering falsely, and terminating the investigation at that point. A dog sniff, on the other hand, ends only when the dog completes its sweep and either alerts or does not alert. *Caballes,* as well as the reasoning expressed in cases such as *Childs* and *Shabazz,* convinces me that the Fourth Amendment does not require police to have reasonable suspicion of illegal activity before they may ask a motorist detained during a legal traffic stop whether they are in possession of any drugs, so long as such questioning does not materially affect the length of the detention.

I do not believe Article 1, Section 11 of the Indiana Constitution requires a different result. An examination of the legality of police conduct under Article 1, Section 11 turns on a balancing of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the police conduct imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005). Ultimately, "[t]he legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* at 359.

There apparently was no suspicion here that Washington was in possession of drugs when Officer Hoffman asked him whether he was. However, the degree of intrusion caused by asking the question was minor, in comparison to the fact that Washington already was legitimately stopped for observed traffic violations when the question was asked. Although it was discussing the Fourth Amendment, I believe what the Seventh

Circuit said in *Childs* also demonstrates the reasonableness of the police conduct here under the Indiana Constitution:

> Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public-for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent. . . .
>
> . . . .
>
> . . . What happened here must occur thousands of times daily across the nation: Officers ask persons stopped for traffic offenses whether they are committing any other crimes. That is not an unreasonable law-enforcement strategy, either in a given case or in gross; persons who do not like the question can decline to answer. Unlike many other methods of enforcing the criminal law, this respects everyone's privacy.

*Childs*, 277 F.3d at 954.

I believe it is reasonable under the Indiana Constitution for police officers to ask motorists already legitimately stopped for a traffic offense whether they are in possession of any illegal contraband, provided such questioning does not materially extend the length of the stop.

*Id.* at 284–85 (Barnes, J., dissenting) (footnote omitted).

█ We note that our supreme court recently granted transfer in *Washington*, thereby vacating this Court's opinion in that case. Although we do not presume that our supreme court will ultimately adopt Judge Barnes's reasoning, we believe that his approach is the sounder one and apply it in this case. Herbert does not contend, and the record does not reflect, that Deputy Heath's question regarding drugs materially extended the length of the traffic stop.[2] As such, we conclude that Deputy Heath's actions were reasonable under Article 1, Section 11 of the Indiana Constitution and that therefore the trial court did not abuse its discretion in admitting evidence regarding the marijuana found in Herbert's car and the cocaine that was found on Herbert's person after his arrest.

## II. Exclusion of Witness

█ Finally, Herbert asserts that the trial court abused its discretion in excluding a witness who was prepared to testify regarding the light transmittance levels of his window tint with respect to Indiana Code Section 9–19–19–4(c).[3] We disagree. As the trial court correctly observed, Herbert was not charged with violating that statute, and thus any testimony regarding the light transmittance levels of the window tint was irrelevant. *See* Tr. at 297 ("[T]he statute talks about an officer looking into the tint and if he can't see the occupants, it seems to me that that was a good [*Terry*] stop and we need to move on. Because he's not charged with violating this statute.").[4] "Evidence which is

---

2. Herbert claims that Deputy Heath's request for a narcotics detection canine was unnecessary, but he does not claim that the request for and use of the canine materially extended the length of the traffic stop.

3. Herbert preserved this issue for appeal by conducting an offer of proof as required by Indiana Evidence Rule 103(a)(2).

4. The record indicates that Deputy Heath wrote a traffic citation for the window tint

not relevant is not admissible." Ind. Evidence Rule 402. Having found no error, we affirm Herbert's convictions.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

violation but did not personally give the cita-     tion to Herbert.